**DeWITT COUNTY ELECTRIC COOPERATIVE, INC.,**
**Petitioner,**

v.

**Daniel S. PARKS and Suzanne Parks, Respondents.**

**No. 98–0446.**

Supreme Court of Texas.

Argued Dec. 10, 1998.

Decided July 1, 1999.

Rehearing Overruled Oct. 21, 1999.

---

6. *See* TEX.R.APP. P. 59.1.

Elizabeth A. Florence, Edward P. Quillin, Joseph Marion Gregory, R. Michael Beene, Dallas, for Petitioner.

W. McNab Miller, III, Houston, Daniel S. Parks, The Woodlands, for Respondents.

Justice OWEN delivered the opinion of the Court.

When an electric utility cut down two trees that were on its easement and trimmed another that had grown within the easement, this suit by the landowners resulted. We are called upon to construe the easement agreement between the parties and to determine the viability of certain DTPA and negligence claims. The trial court granted a directed verdict for the utility on all claims. The court of appeals reversed, holding that the easement agreement was ambiguous and that there were fact questions with regard to two of the DTPA claims and the negligence claim. We hold that the easement agreement unambiguously gave the utility the right to cut the trees at issue. We further hold that the negligence claim and all but one of the DTPA claims fail as a matter of law. Accordingly, we reverse the judgment of the court of appeals in part and render judgment that the plaintiffs take nothing on their breach of contract claim, their negligence claim, and all but one of their DTPA claims. We remand the remaining DTPA claim to the trial court for further proceedings.

## I

Daniel and Suzanne Parks own rural property for which DeWitt County Electrical Cooperative, Inc. provided electrical service for several years. After a voluntary but temporary disconnection of service, Daniel Parks contacted the Cooperative to reestablish electrical service in connection with his plans to renovate the property. The Parkses entered into a new electric service contract with the Cooperative and, in a separate instrument, granted the Cooperative a thirty-foot-wide electric utility easement. The easement agreement gave the Cooperative certain rights with regard to trees that were located on or near the easement.[1]

About a year and a half after the easement agreement was executed, three employees of the Cooperative entered the Parkses' property and removed two oak trees and substantially cut back another. The Cooperative contended that it had the right to do so and that its employees had acted in accordance with its policy that permitted them to completely clear easements of all obstructions. The Parkses, however, had not been told of this "strip-the-right-of-way" policy. Moreover, the Parkses contend that the Cooperative's employees did not cut the trees to facilitate the provision of electric service but instead that their motive was to obtain firewood for a barbecue the Cooperative held for its linesmen.

The Parkses sued the Cooperative for damages, alleging breach of contract, Texas Deceptive Trade Practices–Consumer Protection Act[2] (DTPA) violations, and negligence. At trial both parties tendered motions for directed verdict at the close of the evidence. The trial court denied the motions and submitted all causes of action to the jury.

After the jury retired to deliberate, the trial court requested another judge to substitute for the remainder of the trial and to receive the verdict. The jury then deadlocked on the first question, which asked whether the Cooperative had breached the easement agreement. The jury had not considered the Parkses' DTPA or negligence claims. The jury's impasse on the contract question prompted the substitute judge to review the previously-filed motions for directed verdict. After conducting a hearing, the court concluded that the easement agreement was unambiguous and that the Cooperative had acted within its contractual rights. The court also concluded that the remaining claims were precluded because the action sounded only in contract. The court granted a directed verdict for the Cooperative on all claims.

The court of appeals reversed, holding that the easement agreement was ambiguous, and remanded the breach of contract claim for another trial.[3] The court of appeals further held that two of the Parkses' DTPA claims and their negligence claims were cognizable independent of the breach

---

1. The easement provided, in pertinent part:

   [¶ 2] The right-of-way easement, rights and privileges herein granted shall be used for the purpose of providing electric utility service (overhead or underground) including placing, construction, operating, repairing, inspecting, rebuilding, replacing removing, relocating electric lines, transmission or distribution facilities or equipment, as well as reading any meter or performing any act related to the provision of utility service, keeping the easement clear of all buildings, structures or other obstructions. The Cooperative is specifically granted pedestrian and vehicular ingress and egress.

   [¶ 3] The easement rights herein described shall be no broader than reasonably necessary to provide electric or other utility service. . . .

   . . . .

   [¶ 6] The Cooperative shall have the right to clear the right-of-way of all obstructions, to cut and trim trees within the right-of-way or chemically treat trees or shrubbery with herbicides and to cut down from time to time all dead, weak, leaning, or dangerous trees that are tall enough to strike the wires in falling.

2. TEX. BUS. & COM. CODE §§ 17.41–.63.

3. See 962 S.W.2d 707, 711.

of contract claim and remanded those claims as well.[4]

The Parkses and the Cooperative filed petitions for review in this Court. Both sides ask this Court to reverse and render judgment, contending that there are no disputed issues of material fact. The Parkses contend in the alternative that there were fact questions regarding at least two of their DTPA claims and that the court of appeals did not err in remanding those claims to the trial court. We first consider the Parkses' breach of contract claim.

## II

### A

The Parkses contend that the easement agreement is unambiguous and did not permit the Cooperative to cut down the trees at issue. The Cooperative agrees that the easement is unambiguous but contends that it expressly allowed the removal of any trees within the thirty-foot-wide easement and the cutting and trimming of trees that overhung the easement.

Paragraph six of the easement agreement details the specific actions that the Cooperative may take to maintain the right-of-way:

> The Cooperative shall have the right to clear the right-of-way of all obstructions, to cut and trim trees within the right-of-way or chemically treat trees or shrubbery with herbicides and to cut down from time to time all dead, weak, leaning, or dangerous trees that are tall enough to strike the wires in falling.

The court of appeals concluded that the terms "obstruction," "cut," and "cut down" are ambiguous.[5]

The rules of contract construction and interpretation apply to easement agreements.[6] When a court concludes that contract language can be given a certain or definite meaning, then the language is not ambiguous, and the court is obligated to interpret the contract as a matter of law.[7] A term is not ambiguous because of a simple lack of clarity.[8] Nor does an ambiguity arise merely because parties to an agreement proffer different interpretations of a term.[9] An ambiguity arises only after the application of established rules of construction leaves an agreement susceptible to more than one meaning.[10] Further, for an ambiguity to exist, both potential meanings must be reasonable.[11]

The Parkses contend that paragraph six of the easement agreement, quoted above, should be construed so that no tree can be removed unless it is: (1) within the right-of-way; (2) dead, weak, leaning, or dangerous; (3) in imminent danger of falling; *and* (4) tall enough to strike wires in falling. The Cooperative responds that this construction fails grammatically because it does not give effect to three separate clauses that identify three different rights the Cooperative has with regard to trees. The Cooperative further argues that the Parkses' construction renders superfluous the easement's reference to the "right-of-way" in clauses one and two and the omission of "right-of-way" in clause three. We agree with the Cooperative.

4. *See id.* at 711–13.

5. *See id.* at 711.

6. *See Boland v. Natural Gas Pipeline Co. of Am.*, 816 S.W.2d 843, 844 (Tex.App.—Fort Worth 1991, no writ).

7. *See Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983).

8. *See Universal C.I.T. Credit Corp. v. Daniel*, 150 Tex. 513, 243 S.W.2d 154, 157 (1951).

9. *See Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex.1994).

10. *See R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 519 (Tex.1980).

11. *See Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex.1996).

■ The language in an agreement is to be given its plain grammatical meaning unless to do so would defeat the parties' intent.[12] A grammatical reading of paragraph six reflects that it contains three separate and independent clauses:

The Cooperative shall have the right[: (1) ] to clear the right-of-way of all obstructions[; (2) ] to cut and trim trees within the right-of-way or chemically treat trees or shrubbery with herbicides[; and (3) ] to cut down from time to time all dead, weak, leaning, or dangerous trees that are tall enough to strike the wires in falling.

Thus, the Cooperative had the right to clear the right-of-way of "all obstructions," which includes trees as well as structures, and "to cut and trim trees within the right-of-way or chemically treat" them. The limitation regarding trees that are dead, weak, leaning, or dangerous and tall enough to strike the wires in falling applies only to trees that are not growing on or over the right-of-way.

■ We cannot agree with the Parkses' contention that the term "obstructions" means only something that actually hinders the flow of electricity. The easement agreement does not define "obstructions." When a term in a conveyance is not specifically defined, that term should be given its plain, ordinary, and generally accepted meaning.[13] And we must read the easement as a whole in determining its meaning.[14] The agreement provides in paragraph two that the Cooperative has the right to "keep[ ] the easement clear of all buildings, structures, or other obstructions." Construing the easement agreement in its entirety, the term "obstructions" includes trees that are growing on the easement.

The Parkses also contend that if "obstructions" included trees, then there would be no need for the second clause, which permits the Cooperative to "cut and trim trees within the right-of-way or chemically treat trees or shrubbery with herbicides." Again, we cannot agree. This clause determines what the Cooperative may do when a tree's branches or girth has grown "within" the right-of-way. In that case, the Cooperative may cut and trim or chemically treat the tree. It is only when a tree is wholly outside the easement—when it is neither on nor over the right-of-way—that the Cooperative is limited to cutting down "dead, weak, leaning, or dangerous trees that are tall enough to strike the wires in falling."

It is undisputed that the trunks of two of the trees that the Cooperative cut down were located on the right-of-way. As a matter of law, the easement permitted the Cooperative to remove those trees either because they were "obstructions" or because they were "within the right-of-way." The third tree had its base outside the right-of-way, but its limbs and branches extended into the right-of-way, like a canopy. The record reflects that the Cooperative removed only those parts of the third tree that extended into the right-of-way. The Cooperative had the right to cut or trim this tree under the second clause within paragraph six, which gives the Cooperative the right to "cut and trim trees within the right-of-way."

**B**

The Parkses also contend that we should consider two other documents in construing the easement agreement and that when those provisions are considered, they limit the Cooperative's right to cut down

12. *See Fox v. Thoreson*, 398 S.W.2d 88, 92 (Tex.1966).

13. *See Heritage Resources, Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex.1996) (citing *Western Reserve Life Ins. Co. v. Meadows*, 152 Tex. 559, 261 S.W.2d 554, 557 (1953)); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 202(3)(a) (1981) ("Unless a different intention is manifested, where language has a generally prevailing meaning, it is interpreted in accordance with that meaning.").

14. *See Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983).

trees. We agree with the first proposition but not the second.

■ Daniel Parks entered into a separate service agreement with the Cooperative at the same time he executed the easement agreement. That service agreement provides that the Cooperative's tariff, which is on file with the Texas Public Utility Commission, "IS PART OF THIS AGREEMENT TO THE SAME EXTENT AS IF FULLY SET OUT HEREIN." The tariff, in turn, provides that "[t]he terms of the [service] contract are the provisions of the Electric Service Agreement (including this tariff) and any applicable easement." Thus, the service agreement expressly incorporates the tariff, and the tariff expressly recognizes that the easement agreement contains further terms that affect the service contract.

■ Under generally accepted principles of contract interpretation, all writings that pertain to the same transaction will be considered together, even if they were executed at different times and do not expressly refer to one another.[15] We have cautioned, however, that this rule is simply a device for ascertaining and giving effect to the intention of the parties and cannot be applied arbitrarily.[16] Here, the service agreement, the tariff, and the easement agreement should be considered in determining the intent of the parties. But we must recognize that provisions in each differ.

■ The Parkses rely specifically on a provision in the Cooperative's tariff that states that the easement "need be no broader than reasonably necessary to provide electric utility service." They also point out that the easement itself provides that "the easement rights herein described shall be no broader than reasonably necessary to provide electric and other utility service." But these general provisions of the easement and of the tariff cannot override other, more specific provisions of the easement that spell out in detail the parties' respective rights. The specific rights granted in the easement permitted the Cooperative to cut the trees at issue.

The Parkses argue that the language in the easement and the tariff that says the Cooperative's easement rights are "no broader than necessary" embodies the general principle of Texas easement law that prevents unreasonable interference with the landowner's property rights[17] and limits the Cooperative's right to keep the right-of-way and its surrounding area clear of obstructions and trees. The record indicates that the parties introduced conflicting testimony about whether the trees were either dangerously close to or touching the electric lines and whether the trees were clear of the lines. The Parkses maintain that, because of this disputed testimony, the trial court's directed verdict was improper and that there is at least a fact question about whether the Cooperative's actions were reasonable. As support for their position, they rely on *Lamar County Electric Cooperative Ass'n v. Bryant.*[18] That case is inapposite.

■ In *Lamar,* the utility had acquired a prescriptive easement for the purpose of maintaining electric lines over the plaintiffs' land.[19] There was no express agree-

---

**15.** See *Board of Ins. Com'rs v. Great S. Life Ins. Co.,* 150 Tex. 258, 239 S.W.2d 803, 809 (1951); *World Help v. Leisure Lifestyles, Inc.,* 977 S.W.2d 662, 675–76 (Tex.App.—Fort Worth 1998, pet. denied); *U.S. Life Title Co. v. Andreen,* 644 S.W.2d 185, 189–90 (Tex.App.—San Antonio 1982, writ ref'd n.r.e.); *see also* Restatement (Second) of Contracts § 202(2) (1981) ("[A]ll writings that are part of the same transaction are interpreted together.").

**16.** See *Miles v. Martin,* 159 Tex. 336, 321 S.W.2d 62, 65 (1959).

**17.** See *Stout v. Christian,* 593 S.W.2d 146, 150 (Tex.Civ.App.—Austin 1980, no writ); 25 Am. Jur.2d *Easements and Licenses* § 90 (1966).

**18.** 770 S.W.2d 921 (Tex.App.—Texarkana 1989, no writ).

**19.** See *id.* at 922.

ment.[20] The plaintiffs sued the utility for damages when it cut down thirty-six of their trees.[21] The court upheld the jury's finding that cutting the trees at ground level went beyond what was reasonably necessary for the utility's use and enjoyment of the easement.[22] But when, as here, an easement is created by an express grant, the scope of the easement holder's rights must be determined by the terms of the grant.[23] The trial court did not err in granting the Cooperative's motion for directed verdict on the breach of contract claim. We turn now to the Parkses' DTPA claims.

### III

At trial, the Parkses presented four theories of recovery under the DTPA. The trial court rendered judgment against the Parkses on all of those claims. The court of appeals reversed, holding that two of the claims could be maintained under the DTPA independently of the breach of contract claim. Specifically, the court of appeals concluded that a fact question existed in connection with the Parkses' claim that the Cooperative failed to disclose its clear-the-right-of-way policy and that there was a fact question concerning alleged verbal misrepresentations.[24] The court of appeals did not consider the Parkses' two other DTPA claims. We first address the Parkses' contention that the court of appeals erred in failing to remand those claims.

### A

■ The two DTPA claims that the court of appeals did not consider arise under section 17.46(b)(12).[25] The Parkses assert that (1) the easement agreement itself constitutes a misrepresentation that their trees would not be cut and (2) the Cooperative's unreasonable interpretation of the easement constitutes an actionable representation that the easement gives the Cooperative the right to cut down the trees, when in fact the easement confers no such right.

In *Ogden v. Dickinson State Bank*, we held that a DTPA claim could not arise from actions permissible under a contract.[26] Accordingly, the two DTPA claims in this case that were not remanded to the trial court stand or fall on the meaning of the easement agreement. As we have seen, the easement agreement unambiguously authorizes the Cooperative to remove trees that are in the right-of-way and to cut and trim trees that grow within the right-of-way. The agreement did not misrepresent that the Cooperative would not cut the Parkses' trees. Nor did the Cooperative violate the DTPA when it interpreted the agreement as permitting it to cut the trees. The trial court did not err in granting a directed verdict against the Parkses on these claims.

We turn to the Cooperative's challenge to the two remaining DTPA claims.

### B

■ The Parkses alleged that a fiduciary or special relationship exists between the parties, creating an affirmative duty to disclose material information, which the Cooperative breached by failing to disclose its clear-the-right-of-way policy. While the Parkses do not allege that this conduct

20. *See id.*

21. *See id.*

22. *See id.* at 922–23.

23. *See Phillips Natural Gas Co. v. Cardiff,* 823 S.W.2d 314, 317 (Tex.App.—Houston [1st Dist.] 1991, writ denied) (holding that when a written easement agreement contains an express provision, the agreement, and not the common law, controls).

24. *See* 962 S.W.2d at 712–13.

25. *See* Tex. Bus. & Com.Code § 17.46(b)(12) (listing a "represent[ation] that an agreement confers or involves rights, remedies, or obligations which it does not have or involve" as a deceptive act).

26. 662 S.W.2d 330, 333 (Tex.1983).

violates any specific DTPA provision, a failure to disclose information in an effort to induce another party to enter into a transaction may be actionable under DTPA section 17.46(b)(23).[27]

■ It is undisputed that the Cooperative maintained a clear-the-right-of-way policy pursuant to which it told employees that they could remove all trees and shrubs within easements. The Cooperative admits that it did not disclose this policy to either of the Parkses. But it is not a DTPA violation if one party to an agreement fails to inform the other party that it intends to exercise rights that the agreement expressly confers. The right to clear the easement of trees was disclosed in the easement agreement.

■ To the extent that the Parkses contend that there was a common-law duty to disclose based on a fiduciary relationship, that claim fails as well. We recently confirmed that there is no fiduciary or special relationship between an electric utility and its customers.[28] In any event, as discussed above, the Cooperative's right to clear the right-of-way is fully disclosed in the easement agreement.

The Parkses' fourth and final DTPA claim is that they were falsely led to believe by verbal assurances that the Cooperative would not remove any trees from their land.[29] In this Court, the Cooperative does not contend and accordingly we do not consider whether the two conversations that Daniel Parks had with Cooperative employees included affirmative misrepresentations that are actionable under the DTPA. The Cooperative raises only two arguments with regard to the conversations at issue.

■ The Cooperative first argues that the Parkses were not consumers with respect to the easement agreement. We disagree. In some cases, an easement grants only an interest in real property, and no service is provided by the holder of the easement to the grantor. But that is not the case here. The easement agreement was executed in connection with the Cooperative's contractual agreement to provide electric service. The Parkses were the consumers of that service.

■ The Cooperative's second argument is that a clause in the service agreement forecloses any reliance on the statements allegedly made by Cooperative employees. The service agreement provides:

> This Agreement constitutes the entire agreement between the parties and supercedes [sic] all prior agreements between Member and Cooperative for the service herein described. Member agrees the Cooperative, its agents and employees, have made no representations, promises, or any inducements, written or verbal, which are not contained herein.

Without considering any other possible deficiencies in this argument, it follows that if this clause were construed to mean that no agreement other than the service agreement existed between the Parkses and the Cooperative, then the easement agreement, which was executed at the same time as the service agreement, would be a nullity. To construe the foregoing clause in such a manner would be patently unreasonable. The easement was a related but distinct instrument that set forth rights and obligations other than those covered by the service agreement. The

---

27. The definition of false, misleading, or deceptive acts or practices includes the following:

the failure to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed. TEX. BUS. & COM.CODE § 17.46(b)(23).

28. See Houston Lighting & Power Co. v. Auchan USA, Inc., 995 S.W.2d 668, 675 (Tex. 1999).

29. See TEX. BUS. & COM.CODE § 17.46(b)(12).

above-quoted language cannot reasonably be construed to extinguish all mutual promises and grants in the easement agreement that are in addition to those contained in the service agreement. It follows that the Cooperative cannot rely upon the service agreement to foreclose reliance on alleged misrepresentations that might have been made about the easement agreement.[30]

Because the only issues the Cooperative raised in this Court regarding the alleged misrepresentations are without merit, the judgment of the court of appeals remanding that claim to the trial court stands.

## IV

■ The final issue that we must address is whether the Parkses can maintain a negligence claim independently of their contract claim. We hold that they cannot.

The court of appeals reasoned that, if no agreement had ever existed between the parties, the Cooperative would be liable in negligence if it entered the Parkses' property and cut down their trees.[31] Additionally, the court held that because the Parkses' damages were based on the value of the trees and not the value of the easement, the Parkses could maintain an action for negligence.[32]

We held in *Southwestern Bell Telephone Co. v. DeLanney* [33] that

> [i]f the defendant's conduct ... would give rise to liability independent of the fact that a contract exists between the parties, the plaintiff's claim may also sound in tort. Conversely, if the defendant's conduct ... would give rise to liability only because it breaches the

parties' agreement, the plaintiff's claim ordinarily sounds only in contract.[34]

The court of appeals carried this statement to an illogical conclusion. A person who enters a neighbor's property and cuts down trees with no contractual right to do so can be held liable in tort. But when, as here, a contract spells out the parties' respective rights about whether trees may be cut, the contract and not common-law negligence governs any dispute about whether trees could be cut or how trees were cut.

■ We also note that the measure of damages for breach of an easement that restricted a right to cut trees would be the same as the measure for negligently cutting trees. The measure of damages, standing alone, is not always determinative of whether a tort claim can co-exist with a breach of contract claim.[35]

Our decision in *Formosa Plastics v. Presidio Engineers* [36] does not support the Parkses' arguments in this case. Our unremarkable holding in *Formosa* was that a contract may be induced by fraud when a party promises to perform the contract while knowing that it has no intention of carrying out that promise.[37] In this case, as we have seen, the easement agreement allowed the Cooperative to cut the Parkses' trees, and the Cooperative performed in accordance with that contractual right. The trial court did not err in granting a directed verdict for the Cooperative on the negligence claim.

\* \* \* \* \*

We reverse in part the judgment of the court of appeals and render judgment that the Parkses take nothing on their contract,

---

**30.** *See generally Prudential Ins. Co. of Am. v. Jefferson Assocs.,* 896 S.W.2d 156, 162 (Tex. 1995); *see also Schlumberger Tech. Corp. v. Swanson,* 959 S.W.2d 171, 179–80 (Tex.1997).

**31.** *See* 962 S.W.2d at 712.

**32.** *Id.*

**33.** 809 S.W.2d 493 (Tex.1991).

**34.** *Id.* at 494.

**35.** *See Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.,* 960 S.W.2d 41, 47 (Tex.1998).

**36.** *Id.*

**37.** *See id.* at 46–47.

negligence, and all but one of their DTPA claims. We remand to the trial court for further proceedings the DTPA claim based on alleged representations by employees of the Cooperative.