176 S.W.3d 350 (2004)
Joe NOAH and Susan Newman, Appellants,
v.
UNIVERSITY OF TEXAS MEDICAL BRANCH AT GALVESTON, Appellee.
Ted Breezy, Individually and as Representative of the Estate of Elizabeth Ann Breezy; Joan Breezy Speer; Kathleen Hagan; Victoria Quinn; Paul Hargrave, Individually and as Representative of the Estate of Michael Hargrave; Leanna Lankford, Individually and as Representative of the Estate of Bonnie Stanford O'Neal; Sandra Kohlenberg, Individually and as Representative of the Estate of Billie Kohlenberg; Joann Cooper, Individually and as Representative of the Estate of Edna Mahaffey; George Oliver Jr., Individually and as Representative of the Estate of George Davis Oliver Sr.; Tana Everett; Clifton Everett, Individually and as Representative of the Estate of Billy Everett; Daron C. Mccaslin, Individually and as Representative of the Estate of James B. Mccaslin; Edna Pauline Mccaslin; Todd Sisson, Individually and as Representative of the Estate of Linda Porritt; Shad Sisson; Brandi Landuyut; Harriet Whitworth, Individually and as Representative of the Estate of John Whitworth; Samuel *351 Whitworth; Barbara Hunt; Melinda Slaughter, Individually and as Representative of the Estate of Michael Graf; Lacy Graf; Andrew Graf; Helen Carrig, Individually and as Representative of the Estate of Paul Carrig; Theresa Carrig; Kay Callin; Martin Carrig; Tina Vaughn, Individually and as Representative of the Estate of Pearl Ethel Purvis; Kevin Tippie; Ricardo Billescas, Individually and as Representative of the Estate of Imelda Billescas Romeros; Irma Young; Veronica Lopez; Yolanda B. Garcia; and Belia V. Zamora, Appellants,
v.
University of Texas Medical Branch at Galveston, Appellee.
Nos. 01-03-00985-CV, 01-03-00986-CV.
Court of Appeals of Texas, First District, Houston.
August 12, 2004.
Rehearing Overruled January 3, 2005.
*353 David George, Sandra T. Krider, Edwards & George, LLP, Houston, TX, for Appellants.
Anne L. Morgan, Ryan D. Clinton, Asst. Attys. Gen., Austin, TX, for Appellee.
Panel consists of Justices TAFT, JENNINGS, and HANKS.

OPINION
TERRY JENNINGS, Justice.
We consider these two interlocutory, accelerated appeals together because they present identical governmental immunity issues regarding the alleged mishandling of willed bodies and remains.[1] Appellants, Joe Noah and Susan Newman ("the Noah plaintiffs") and Ted Breezy, individually and as representative of the estate of Elizabeth Ann Breezy, Joan Breezy Speer, Kathleen Hagan, Victoria Quinn, Paul Hargrave, individually and as representative of the estate of Michael Hargrave, Leanna Lankford, individually and as representative of the estate of Bonnie Stanford O'Neal, Sandra Kohlenberg, individually and as representative of the estate of Billie Kohlenberg, Joann Cooper, individually and as representative of the estate of Edna Mahaffey, George Oliver Jr., individually and as representative of the estate of George Davis Oliver Sr., Tana Everett, Clifton Everett, individually and as representative of the estate of Billy Everett, Daron C. McCaslin, individually and as representative of the estate of James B. McCaslin, Edna Pauline McCaslin, Todd Sisson, individually and as representative of the estate of Linda Porritt, Shad Sisson, Brandi Landuyut, Harriet Whitworth, individually and as representative of the estate of John Whitworth, Samuel Whitworth, Barbara Hunt, Melinda Slaughter, individually and as representative of the estate of Michael Graf, Lacy Graf, Andrew Graf, Helen Carrig, individually and as representative of the estate of Paul Carrig, Theresa Carrig, Kay Callin, Martin Carrig, Tina Vaughn, individually and as representative of the estate of Pearl Ethel Purvis, Kevin Tippie, Ricardo Billescas, individually and as representative of the estate of Imelda Billescas Romeros, Irma Young, Veronica Lopez, Yolanda B. Garcia, and Belia V. Zamora ("the Breezy plaintiffs") (all appellants in both cases, collectively, "the plaintiffs"), challenge the trial court's orders granting, in each case, a plea to the jurisdiction in favor of appellee, the University of Texas Medical Branch at Galveston ("UTMB").[2]
In each case, the plaintiffs, in two issues, contend that the trial court erred in granting *354 UTMB's pleas to the jurisdiction because the plaintiffs had adequately alleged (1) that UTMB breached a "special relationship" with them, such as to permit them to seek mental anguish damages against UTMB or, alternatively, that they are entitled to seek recovery for such damages notwithstanding the existence of a special relationship and (2) that UTMB caused their injuries by the use of "tangible personal property," such that UTMB's governmental immunity was waived, pursuant to the provisions of the Tort Claims Act.[3]
We affirm the orders of the trial court.

Factual and Procedural Background
The plaintiffs, following the deaths of relatives who had agreed to donate their bodies to UTMB, each signed UTMB forms, entitled "Donation of a Decedent's Body," which read, in part, as follows:
I [signator] . . . donate said decedent's body to [UTMB] for the purpose of advancing medical science.
. . . .
It is my understanding that [the] final disposition of the body shall be cremation.
I hereby relinquish all rights and claims regarding hereon [sic] described body, by any person whatsoever, and direct that in accepting and using the body for scientific purposes, and disposing of the body, neither the Anatomical Board of the State nor the receiving institution shall incur any liability, and no claim shall arise against that institution in any manner.
This form also provided that, in the event that UTMB did not need a body at the time of a decedent's death, the remains could be assigned to another institution.
In July 2002, a representative of UTMB sent a letter to each of the plaintiffs concerning the fate of the donated remains of the plaintiffs' deceased relatives. Each letter read, in part, as follows:
I am writing to express my deep personal regret that we are unable to return [the decedent's] ashes to you. On behalf of [UTMB], I pledge that we will do everything in our power to symbolically recognize the importance of [the decedent's] contribution to medical education and research.
We make no excuses for the failure of oversight that led to the commingling of donors' ashes and caused pain to the relatives of those to whom we owe such a special debt of gratitude. We also recognize that nothing can ever take the place of the remains of your loved one.
. . . .
We understand your need for closure and are putting every effort into finding answers to the questions that donors' families have raised. Our internal audit continues, as does the criminal investigation, and I promise to keep you informed of any significant findings or developments.
. . . .
We cannot undo what has been done, but we can reaffirm our deepest appreciation for [the decedent's] invaluable gift and vow to work hard at regaining whatever trust we have compromised.
The plaintiffs subsequently filed separate lawsuits against UTMB,[4] asserting causes of action for negligence, negligent supervision, negligent entrustment, negligence per se, breach of contract, and constructive *355 fraud. In their "Sixth Amended Petition," the Breezy plaintiffs summarized the basis for their lawsuit as follows:
While they were still alive, UTMB promised all of the people whose ashes and remains are now missing that their bodies would only be used for the advancement of medical science and education. UTMB assured these individuals and their families that their bodies would be treated with the dignity and consideration that is due to every human being. As a result of UTMB's failure of oversight and negligent practices, however, the bodies of Plaintiff's loved-ones were not used for the advancement of science or education as promised, but were treated as chattel. Their ashes were commingled and are unable to be identified, and their body parts were sold for profit.
The Noah plaintiffs based their causes of action against UTMB on similar allegations.
The plaintiffs sought recovery of damages for mental anguish and emotional distress, as well as their attorneys' fees, and they alleged that their injuries had been caused by either a condition of, or by UTMB's use or misuse of, "tangible personal property"[5]  specifically, the remains of the plaintiffs' relatives and the tools and equipment used in the cremation process.
UTMB filed pleas to the jurisdiction in each case. Among its several grounds, UTMB argued that (1) no "special relationship" existed between the plaintiffs and UTMB, such as would permit the plaintiffs to recover mental anguish damages without sustaining a physical injury, and (2) the Tort Claims Act does not waive UTMB's governmental immunity from the plaintiffs' causes of action. The trial court subsequently granted UTMB's pleas to the jurisdiction, dismissed the plaintiffs' causes of action against UTMB, and severed the plaintiffs' claims against UTMB into separate causes.

Governmental Immunity
A governmental unit, such as UTMB, is immune from suit unless the State consents to suit. Dallas Area Rapid Transit v. Whitley, 104 S.W.3d 540, 542 (Tex.2003); see TEX. CIV. PRAC. & REM.CODE ANN. § 101.001(3) (Vernon Supp.2004) (defining "governmental unit"). Governmental immunity from suit defeats a trial court's subject matter jurisdiction. Whitley, 104 S.W.3d at 542. In a suit against a governmental unit, a plaintiff must, therefore, affirmatively demonstrate the trial court's jurisdiction by alleging facts demonstrating a waiver of immunity. Id. In our review of the trial court's rulings on UTMB's pleas to the jurisdiction based on governmental immunity, we determine from the facts alleged by the plaintiffs, and from the evidence relevant to the jurisdictional issues, whether the plaintiffs' claims fall within a waiver of immunity. Id.
Under the Tort Claims Act, a state governmental unit, such as UTMB, is liable for personal injuries "caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM.CODE ANN. § 101.021(2) (Vernon 1997); see id. § 101.025 (Vernon 1997) (waiving governmental immunity from suit "to the extent of liability created by this chapter"). The Texas Supreme Court has held that "the Tort Claims Act does not create a cause of action; it merely waives sovereign immunity as a bar to a suit that would otherwise exist." City of Tyler v. Likes, 962 S.W.2d 489, 494 (Tex.1997).
*356 In their first issue, the plaintiffs argue that the trial court erred in granting UTMB's pleas to the jurisdiction because the plaintiffs "adequately alleged a breach of a `special relationship'" establishing their standing to seek mental anguish damages against UTMB in the absence of physical injuries. The plaintiffs also argue, in the alternative, that they are entitled to seek recovery of damages for mental anguish from UTMB for its alleged breach of its contractual duties.

Special Relationship
Here, the plaintiffs seek recovery of damages for their mental anguish and emotional distress resulting from the commingling of the ashes and alleged mishandling of the remains of their relatives. Texas courts generally do not recognize a legal duty to avoid negligently inflicting mental anguish. Id.; Boyles v. Kerr, 855 S.W.2d 593, 597 (Tex.1993). However, the Texas Supreme Court has noted that mental anguish damages may be compensable when they are a foreseeable result of the breach of a duty arising out of certain "special relationships," including "a very limited number of contracts dealing with intensely emotional noncommercial subjects such as preparing a corpse for burial." Likes, 962 S.W.2d at 496; see Pat H. Foley & Co. v. Wyatt, 442 S.W.2d 904, 906 (Tex.Civ.App.-Houston [14th Dist.] 1969, writ ref'd n.r.e.). Special relationship cases generally have three common elements: (1) a contractual relationship between the parties, (2) a particular susceptibility to emotional distress on the part of the plaintiff, and (3) the defendant's knowledge of the plaintiff's particular susceptibility to the emotional distress, based on the circumstances. Lions Eye Bank v. Perry, 56 S.W.3d 872, 877 (Tex.App.-Houston [14th Dist.] 2001, pet. denied); see also Johnson v. Standard Fruit & Vegetable Co., 984 S.W.2d 633, 638 (Tex.App.-Houston [1st Dist.] 1997), rev'd on other grounds, 985 S.W.2d 62 (Tex.1998).
Thus, Texas courts have recognized that a claimant may recover damages such as those sought by the plaintiffs based on a contractual theory of liability. We note, however, that when a governmental unit contracts with a private party, the governmental unit waives its immunity from liability, but not its immunity from suit. Catalina Dev., Inc. v. County of El Paso, 121 S.W.3d 704, 705 (Tex.2003). A governmental unit's immunity from suit may be waived only by express consent. Id.
The plaintiffs argue that their special relationship claims sound in tort, not in contract, and that, accordingly, they are not required to establish an express waiver of immunity to proceed with their claims under the Tort Claims Act. In support of this assertion, the plaintiffs direct our attention to section 868 of the Restatement (Second) of Torts, entitled "Interference with Dead Bodies," which provides as follows:
One who intentionally, recklessly or negligently removes, withholds, mutilates or operates upon the body of a dead person or prevents its proper interment or cremation is subject to liability to a member of the family of the deceased who is entitled to the disposition of the body.
RESTATEMENT (SECOND) OF TORTS § 868 (1979). The comments following this section explain the basis for liability under such circumstances, in part, as follows:
The technical basis of the cause of action is the interference with the exclusive right of control of the body, which frequently has been called by the courts a "property" or a "quasi-property" right. This does not, however, fit very well into the category of property, since the body ordinarily cannot be sold or transferred, has no utility and can be used only for *357 the one purpose of interment or cremation.
Id. cmt. a.
It is true that, when a defendant's conduct would give rise to liability independently of the fact that a contract exists between the parties, the plaintiff's claims may also sound in tort. DeWitt County Elec. Coop. v. Parks, 1 S.W.3d 96, 105 (Tex.1999) (citing Southwestern Bell Tel. Co. v. DeLanney, 809 S.W.2d 493, 494 (Tex.1991)). However, if the defendant's conduct would give rise to liability only because it breaches the parties' agreement, the plaintiff's claims ordinarily sound only in contract. Parks, 1 S.W.3d at 105; see UTMB v. Harrison, No. 14-02-01276-CV, 2003 WL 21803314, at *3 (Tex.App.-Houston [14th Dist.] Aug. 7, 2003, pet. denied) (mem.op.) ("[T]he character of a claim, as between tort and contract, is determined by the source of the duty breached, not whether the breach results from negligence. . . .").
In Parks, landowners sued an electrical utility cooperative for cutting down two trees and trimming another that had grown within an easement. Id. 1 S.W.3d at 98. The landowners and the cooperative had previously entered into an easement agreement, which gave the cooperative certain rights with regard to trees that were located on or near the easement. Id. at 99. Noting that the contract spelled out the parties' respective rights concerning the cutting of trees, the Texas Supreme Court held that the landowners could not maintain a negligence claim independent of their contract claim because the contract, and not common-law negligence, governed any dispute about whether trees could be cut or how trees were to be cut. Id. at 105.
Here, as noted above, the causes of action asserted by the plaintiffs against UTMB all originate from (1) the plaintiffs' special relationships with UTMB, which were formed as a result of their contractual agreements to donate the bodies of the plaintiffs' relatives, and (2) UTMB's alleged breach of its duties owed to the plaintiffs under this contractual special relationship. With certain limitations, the plaintiffs transferred the "right of control" of the remains of their relatives  the basis for a potential tort cause of action under section 868  to UTMB by the terms of the parties' contractual agreements. In the absence of these contractual arrangements, no special relationship would have existed between the parties. Thus, the source of the duties allegedly breached by UTMB was the parties' contractual agreements, not section 868. Moreover, the plaintiffs have not directed us to any Texas case adopting section 868 of the Restatement (Second) of Torts as the basis for a tort cause of action for breach of a special relationship. Rather, as noted above, Texas courts have treated such special relationship claims, generally, as sounding in contract. See Likes, 962 S.W.2d at 496; Harrison, 2003 WL 21803314, at *3; Lions Eye Bank, 56 S.W.3d at 877; Johnson, 984 S.W.2d at 638; Wyatt, 442 S.W.2d at 906.
We hold that, because the special relationship claims presented by the plaintiffs in this case do not arise from a breach of any duties owed to the plaintiffs by UTMB independent of its contractual duties, the plaintiffs' special relationship claims sound in contract, not tort. See Harrison, 2003 WL 21803314, at *3 (holding that, because plaintiffs did not allege that UTMB breached tort duties independent of contractual duties, special relationship claims for mishandling of remains sounded in contract, rather than in tort.).[6]
*358 As noted above, to bring a lawsuit against a governmental unit for breach of contract, a party must generally obtain express consent to sue. Catalina, 121 S.W.3d at 705; Travis County v. Pelzel & Assocs., Inc., 77 S.W.3d 246, 248 (Tex.2002); see TEX. CIV. PRAC. & REM.CODE ANN. §§ 107.001-.005 (Vernon 1997) (providing statutory means to obtain legislative resolution granting permission to sue governmental unit). The Legislature has also provided an administrative process by which parties can resolve claims against governmental units concerning written contracts for goods, services, or construction. See TEX. GOV'T CODE ANN. §§ 2260.001-.108 (Vernon 2000 & Supp.2004); Gen. Servs. Comm'n v. Little-Tex. Insulation Co., Inc., 39 S.W.3d 591, 595-96 (Tex.2001). Chapter 2260 expressly provides that its procedures do not apply to claims for personal injuries arising from an alleged breach of a contract and that its procedures "are exclusive and required prerequisites to suit" under Chapter 107. TEX. GOV'T CODE ANN. §§ 2260.002, 2260.005 (Vernon Supp.2004).
Here, it is undisputed that the plaintiffs did not obtain legislative consent to sue UTMB. The plaintiffs assert that, because their claims for personal injuries do not fall within the types of claims requiring compliance with the administrative process established by Chapter 2260, "UTMB's claimed immunity [from suit] is unavailing." However, the fact that Chapter 2260 does not apply to the plaintiffs' claims does not mean that UTMB has waived its governmental immunity from suit. Rather, the plaintiffs must still establish the existence of consent to sue UTMB. See Harrison, at *2.
Because the record indicates that the plaintiffs did not establish the existence of legislative consent to sue UTMB for their special relationship claims, which arose from a breach of contract, we hold that UTMB is immune from suit on such claims and that the trial court did not have subject matter jurisdiction over those claims.

Duties Created by Statute
The plaintiffs alternatively argue that, independently of its contractual duties, UTMB breached certain statutory duties created by the provisions of the Administrative Code[7] and the Health and Safety Code[8] concerning the handling and disposal of the remains of willed bodies and prohibiting the sale or transfer of bodies or body parts out of state.
Although these statutes prescribe the manner in which UTMB and other institutions must handle and dispose of willed bodies and their remains,[9] the plaintiffs do not point to any provisions in these statutes creating a private cause of action or an express waiver of governmental immunity from suit. Legislative consent to suit, whether expressed by statute or otherwise, must be given in "clear and unambiguous *359 language." Univ. of Tex. Med. Branch v. York, 871 S.W.2d 175, 177 (Tex.1994); see, e.g., TEX. CIV. PRAC. & REM.CODE ANN. § 101.025(a) (Vernon 1997) ("Sovereign immunity to suit is waived and abolished to the extent of liability created by this chapter.").
Accordingly, we hold that the plaintiffs have not shown that the provisions of the Administrative Code and the Health and Safety Code contain an express statutory waiver of UTMB's governmental immunity from the plaintiffs' suit for the recovery of mental anguish damages.

Waiver by Conduct
The plaintiffs further argue that UTMB's conduct in allegedly breaching its contractual duties constitutes an equitable basis for this Court to hold that UTMB waived its governmental immunity from suit.
Although the Texas Supreme Court has suggested that certain circumstances "might warrant recognizing a waiver by conduct," the Court has, so far, not recognized such a waiver when a governmental unit simply breaches its contractual duties. Catalina, 121 S.W.3d at 706; see Fed. Sign v. Tex. So. Univ., 951 S.W.2d 401, 408 n. 1 (Tex.1997). In the absence of any precedential authority setting out more than the possibility of an equitable waiver of immunity by such conduct, we decline to recognize an equitable waiver of UTMB's immunity from suit under these circumstances. See Harrison, at *2 n. 2 ("As an intermediate appellate court, we defer to the Texas Supreme Court to decide when, if ever, and under what circumstances such a contention might become sustainable.").

Conclusion
We hold that, under the circumstances presented, the plaintiffs have not established the existence of a waiver of UTMB's immunity from suit for their causes of action seeking recovery solely of mental anguish damages. Accordingly, we further hold that the trial court did not err in granting UTMB's pleas to the jurisdiction, and we overrule the plaintiffs' first issue. Because our resolution of this issue disposes of these appeals, we do not consider the plaintiffs' second issue.
We affirm the orders of the trial court.
NOTES
[1] Although filed in separate cause numbers in the trial courts below, these cases were considered together by the same judge, the Hon. Norma Venso, sitting as the presiding judge of the 56th District Court and as an assigned judge to the 10th District Court.
[2] We have jurisdiction over these appeals pursuant to section 51.014(a)(8) of the Civil Practice and Remedies Code, which permits an interlocutory appeal of a district court's order that grants a plea to the jurisdiction filed by a governmental unit. TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(8) (Vernon Supp.2004).
[3] See TEX. CIV. PRAC. & REM.CODE ANN. §§ 101.001-.109 (Vernon 1997 & Supp.2004).
[4] The plaintiffs also asserted causes of action against other defendants who are not parties to these appeals.
[5] See TEX. CIV. PRAC. & REM.CODE. ANN. § 101.021 (Vernon 1997).
[6] Similarly, in Lions Eye Bank, the court held that the plaintiffs could not establish all of the elements of a special relationship giving rise to a duty not to negligently inflict mental anguish because there was no contractual relationship between the plaintiffs and defendant. 56 S.W.3d at 877.
[7] See 25 TEX. ADMIN. CODE §§ 477.1-479.5 (2004).
[8] See TEX. HEALTH & SAFETY CODE ANN. §§ 691.021-.035 (Vernon 2003 & Supp.2004).
[9] See, e.g., 25 TEX. ADMIN. CODE § 479.4(d) ("Provisions must be made that the individual ashes of a single body may be recovered for return to the family if that request has been made in advance."); TEX. HEALTH & SAFETY CODE ANN. § 691.022 (requiring State Anatomical Board to adopt rules "to ensure that each body and anatomical specimen . . . is treated with respect.") (Vernon Supp.2004).