NO. 07-03-0438-CV

 07-03-0439-CV


IN THE COURT OF APPEALS


FOR THE SEVENTH DISTRICT OF TEXAS


AT AMARILLO


PANEL A


JUNE 30, 2005


______________________________


TIM KENNEDY, INDIVIDUALLY AND AS THE REPRESENTATIVE

OF THE ESTATE OF EDNA MAE KENNEDY, ET AL., APPELLANTS


V.


UNIVERSITY OF TEXAS MEDICAL BRANCH AT GALVESTON, APPELLEE

_________________________________


FROM THE 136TH DISTRICT COURT OF JEFFERSON COUNTY;


NO. D-0168353; HONORABLE MILTON SHUFFIELD, JUDGE

_______________________________


and

________________________________


CATHY TAYLOR, INDIVIDUALLY AND AS THE REPRESENTATIVE

OF THE ESTATE OF DOROTHY HEBERT, ET AL., APPELLANTS


V.


UNIVERSITY OF TEXAS MEDICAL BRANCH AT GALVESTON, APPELLEE

__________________________________


FROM THE 172ND DISTRICT COURT OF JEFFERSON COUNTY;

NO. E0168256; HONORABLE DONALD FLOYD, JUDGE

__________________________________


Before REAVIS and CAMPBELL, JJ. (1)

MEMORANDUM OPINION

 These companion cases present another of the appeals challenging the dismissal
of claims arising from the operation of the willed body program at the University of Texas
Medical Branch at Galveston (UTMB) on a plea to the jurisdiction filed by a governmental
entity. We will affirm the trial court's dismissal of claims against UTMB. 

 The two groups of plaintiffs, appellants here, (2) filed separate suits against UTMB,
three of its employees and other entities for mental anguish damages they claim resulted
from UTMB's operation of its willed body program. Appellants alleged UTMB failed to
return cremation remains of relatives whose bodies had been donated to the program for
the advancement of medical science. (3) They also alleged a UTMB employee illegally sold
bodies and body parts for profit. (4) Appellants asserted claims against UTMB based on
negligence, negligent supervision, negligent entrustment, negligence per se, breach of
contract, constructive fraud and vicarious liability.

 UTMB filed pleas to the jurisdiction in each suit arguing, among other contentions,
that appellants failed to allege viable causes of action against it, and failed to allege facts
supporting a waiver of governmental immunity. The trial court granted UTMB's pleas in
both cases, without stating the specific basis for its rulings. The orders also severed the
claims against UTMB in each case, creating the final appealable orders now before us.

 Appellants have filed a single brief in support of both appeals. In it they present two
issues: (1) whether they adequately alleged a special relationship (5) to establish standing
to recover mental anguish damages against UTMB; and (2) whether their pleadings
properly alleged injuries caused by the use of tangible personal property, bringing their
claims within the waiver of immunity under Section 101.021(2) of the Texas Tort Claims
Act. (6) 

 Appellants presented the same issues in their appeals of the trial court's grant of the
pleas to the jurisdiction filed by another defendant in the same cases, the Anatomical Board
of Texas, which was affirmed in Taylor, 148 S.W.3d 661. In that opinion, the Beaumont
court expressed agreement with the Anatomical Board's contention that the plaintiffs'
claims founded on an asserted special relationship authorizing recovery of damages for
mental anguish were based on contract, not tort law. Id. at 665. The First and Fourteenth
Courts of Appeals reached the same conclusion in related cases. See Noah v. University
of Texas Medical Branch at Galveston, No. 01-03-0985-CV, 2004 WL 1794642
(Tex.App.-Houston [1st Dist.] Aug. 12, 2004, pet. denied) (not yet reported); University of
Texas Medical Branch at Galveston v. Harrison, No. 14-02-1276-CV, 2003 WL 21803314
(Tex.App.-Houston [14th Dist.] 2003, pet. denied) (mem. op.). We will follow those courts'
lead here. Because the donation agreements (7) by which the decedents or family members
authorized donation of the decedents' bodies spell out UTMB's obligations for the return
of the cremation remains, see DeWitt County Elec. Co-op v. Parks, 1 S.W.3d 96, 105 (Tex.
1999), and for the further reasons discussed in Noah at 5, we find that appellants' special
relationship claims sound in contract. 

 Appellants argue that the duties concerning handling of willed bodies imposed by
provisions of the Health and Safety Code and the Administrative Code (8) give rise to a legally
cognizable special relationship between them and UTMB. The court rejected those
contentions in Noah, and we also conclude that the statutory and administrative provisions
cited do not form a basis for UTMB's liability to appellants independent of their relationship
under the donation agreements. See Noah, at 6. 

 By contracting with a private party, a governmental unit waives immunity from liability
under the contract but not immunity from suit. It waives immunity from suit only through
express consent. See Catalina Dev., Inc. v. County of El Paso, 121 S.W.3d 704, 705 (Tex.
2003); Federal Sign v. Texas Southern Univ., 951 S.W.2d 401, 408 (Tex. 1997). 
Appellants have not shown the existence of the required express consent for suit against
UTMB based on breach of contract. (9) Appellants contend that, even if their claims against
UTMB are based in contract, the medical school waived its immunity from suit by accepting
the donated bodies and making use of them then breaching its agreement to return the
cremated remains. See Catalina, 121 S.W.3d 705-06; Federal Sign, 951 S.W.2d at 408 
n.1. On this point also we will follow the Harrison and Noah opinions, and decline to find
that UTMB's conduct served to waive its immunity. Noah, at 7; Harrison, at 2. See also
Taylor, 148 S.W.3d at 665. Accordingly, the trial court did not err in its grant of UTMB's plea
to the jurisdiction. 

 Appellants' first issue is overruled, and our disposition of it makes consideration of
their second issue unnecessary. We affirm the orders of the trial court dismissing
appellants' claims against UTMB. 

 James T. Campbell

 Justice
1. Former Chief Justice Phil Johnson was on the panel that heard oral argument. He
did not participate in the decision. Tex. R. App. P. 41.1(b).
2. Appellants are the same parties listed in the opinion in Taylor v. Anatomical Board
of Texas, 148 S.W.3d 661, 662-63 (Tex.App.-Beaumont 2004, pet. denied).
3. The bodies were provided in conformity with the Texas Anatomical Gift Act. See
Tex. Health & Safety Code Chapter 692 (Vernon 2003 & Supp. 2004).
4. The petitions did not allege the sale of any specific body.
5. See City of Tyler v. Likes, 962 S.W.2d 489, 496 (Tex. 1997) (mental anguish
compensable as the foreseeable result of a breach of duty arising out of certain special
relationships).
6. Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2) (Vernon 2005).
7. Referred to in Taylor as the "willed body forms." 148 S.W.3d at 665.
8. Appellants cite Tex. Health & Safety Code Ann. § 691.022 (Vernon Supp. 2004),
and regulations of the Anatomical Board, 25 Tex. Admin. Code §§ 477.4, 479.4 and 479.5
(2003).
9. The provisions of Chapter 2260 of the Government Code have no application here
because appellants' claims are for personal injury. See Tex. Gov't Code Ann. § 2260.002
(Vernon 2000). 



 U. S. Supreme Court does not require
proof of harm. Cain v. State, 947 S.W.2d 262, 264 (Tex.Crim.App. 1997). However,
seating a disqualified juror is not among the structural errors identified by the Court as
being immune from harmless error analysis. See Johnson v. United States, 520 U.S. 461,
468-69, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997). Neither is this error a constitutional error
within the meaning of Texas Rule of Appellate Procedure 44.2(a). (1) Jones v. State, 982
S.W.2d 386, 390-91 (Tex.Crim.App.1998). Thus, we are required, pursuant to rule 44.2(b),
to determine if the error affected a substantial right of the appellant. Llamas v. State, 12
S.W.3d 469, 470 (Tex.Crim.App. 2000). A substantial right is affected when the error had
a substantial or injurious effect or influence in determining the jury's verdict. Id. To
determine whether such harm occurred, everything in the record must be considered,
including all the evidence admitted at trial, the closing arguments, and the juror's
comments during voir dire. Id. at 471.

 In the present case, there was no discussion of the facts of the case during voir dire. 
Juror McKissack was questioned one time by the State's attorney on matters not involved
in this appeal. During the State's case-in-chief, the evidence consisted of the testimony
of the officer who chased appellant and the detective who took a statement from appellant,
wherein appellant admitted committing the offense of evading. The appellant called no
witnesses during the guilt-innocence phase. After both sides had rested and closed, juror
McKissack informed the court that she had seen some of the events involved in the case.
McKissack was questioned by the court and both parties. McKissack advised that she saw
only the very end of the incident, knew something was going on but did not know what until
the State's opening statement reminded her of the incident in front of the school. 
McKissack stated that she believed that she could make her decision based only on the
evidence she had heard in court. Viewing all of the evidence contained in the record, we
conclude that the evidence establishing appellant's guilt for the underlying charge of
evading arrest with a motor vehicle was substantial. Accordingly, under the analysis
mandated by rule 44.2(b), we conclude that the error in retaining the juror did not influence
the jury or had a very slight effect on its verdict. Johnson v. State, 967 S.W.2d 410, 417
(Tex.Crim.App. 1998). Therefore, the error was harmless. Inasmuch as the error in
keeping juror McKissack is deemed harmless, the refusal to grant a mistrial based on the
retention of the juror was not so prejudicial that "expenditure of further time and expense
would be wasteful and futile." Wood, 18 S.W.3d at 648. Appellant's first issue is therefore
overruled. 

 Appellant's second issue contends that the evidence was legally insufficient to
sustain a finding that he used or exhibited a deadly weapon. An attack on the legal
sufficiency of the evidence requires us to review all the evidence in a light most favorable
to the jury's verdict. Cates v. State, 102 S.W.3d 735, 738 (Tex.Crim.App. 2003) (citing
Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). Upon
reviewing the evidence, we must determine whether any rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt. Id. The evidence
is measured against a hypothetically correct charge. Gollihar v. State, 46 S.W.3d 243,
255-56 (Tex.Crim.App. 2001). 

 To sustain a deadly weapon finding, the evidence must show that the object in
question meets the requirement of a deadly weapon, see Tex. Penal Code Ann. §
1.07(a)(17)(B) (Vernon 2003); the deadly weapon was used during the transaction from
which the conviction was obtained, see Ex parte Jones, 957 S.W.2d 849, 851
(Tex.Crim.App. 1997); and that other people were put in actual danger, Cates, 102 S.W.3d
at 738. A motor vehicle may become a deadly weapon if used in a manner capable of
causing death or serious bodily injury. Ex parte McKithan, 838 S.W.2d 560, 561
(Tex.Crim.App. 1992). 

 Appellant contends that the evidence does not support the jury's finding that he
used his motor vehicle as a deadly weapon because there was no direct testimony that
anyone was placed in actual danger by appellant's operation of the vehicle. According to
appellant, evidence must be presented that he caused actual danger to the public rather
than merely posing some hypothetical threat of danger. Cates, 102 S.W.3d at 738. In
addressing the legal sufficiency of the evidence necessary to support a deadly weapon
finding, the Court of Criminal Appeals held, in Drichas v. State, No. PD-1915-04, 2005 WL
2660161, at *3 (Tex.Crim.App. Oct. 19, 2005), that the manner that the vehicle in question
was used proved more than just a hypothetical danger, even though the testimony was
only that there was "some traffic" on the road at the time of the occurrence. 

 The record reveals that, while evading arrest, appellant ignored a stop sign and
drove through an intersection without stopping, drove through a residential area at speeds
up to 60 miles per hour, and continuously ignored the emergency lights on the patrol car
behind him. This record shows that, by the manner of its use, appellant's vehicle was
capable of causing death or serious bodily injury. We find that, when this evidence is
viewed in the light most favorable to the prosecution, a rational trier of fact could find that
appellant used his vehicle as a deadly weapon beyond a reasonable doubt. Therefore,
appellant's second issue is overruled.

 Having overruled appellant's issues, the judgment of the trial court is affirmed.


 Mackey K. Hancock

 Justice



Do not publish. 
1. " "