Opinion issued November 29, 2007










     





In The
Court of Appeals
For The
First District of Texas




NO. 01-06-00690-CV




AMIRALI M. NARSI, Appellant

V.

WEINGARTEN REALTY INVESTORS, Appellee




On Appeal from the 189th District Court
Harris County, Texas
Trial Court Cause No. 2003-53096




MEMORANDUM OPINION
          Weingarten Realty Investors sued Amirali M. Narsi for breach of a lease. After
a bench trial, the trial court found that the lease was ambiguous and issued a final
judgment in favor of Weingarten.



          On appeal, Narsi argues that the final judgment was improper because (1) the
trial court misconstrued the plain language of the Original Lease, Renewal
Agreement, and Lease Assignment; (2) the trial court failed to have Weingarten
mitigate its damages; and (3) the trial court granted attorney’s fees without evidence
showing that they were reasonable and necessary. We affirm.
Background
            Jenny Hyun, associate counsel for Weingarten, testified that, in 1995,
Weingarten entered into a commercial lease (“the Original Lease”) with Narsi, who
was going to open a Dollar Store. The Original Lease was to remain in effect until
November 30, 1998. In 1998, the parties extended the lease (“the Renewal
Agreement”) until November 30, 2001. Hyun testified that, before the Renewal
Agreement expired, Narsi assigned the lease to Ahmed Mamji, who was going to take
over the Dollar Store. Their “Lease Assignment, Assumption & First Amendment to
Lease” (“the Lease Assignment”) prolonged the Renewal Agreement until November
30, 2006. After the Renewal Agreement term expired, Mamji defaulted on the Lease
Assignment. Weingarten locked Mamji out of the premises, relet the premises, and
sued Narsi, alleging that he was liable for the time remaining on the Lease
Assignment. 
            Paragraph 4 of the Lease Assignment states as follows:
[Mamji] does hereby accept this Assignment, assume and agree to
perform the covenants, duties and obligations of “Tenant” under said
Lease Contract (including the payment of rent), and agrees to be bound
by all of such covenants, duties and obligations of Tenant as fully to the
same extend as if [Mamji] had been the original party designated as
“Tenant” thereunder; and [Mamji] shall be fully, directly and primarily
liable for the performance thereof, and it is agreed that the liability of
[Narsi] and [Mamji] is joint and several and may be enforced against
either without any nature of notice to, demand upon, proceeding against
or judgment against the other. 

(Emphasis added.) Paragraph 5 provides as follows:
 
[Weingarten] hereby consents to this Assignment with the express
understanding that this Assignment shall in no way relieve [Narsi] of
liability for the performance of the covenants, duties and obligations of
[Mamji] under said Lease Contract, including liability for the full
amount of rental and any additional charges, provided to be paid by
[Mamji] to [Weingarten] pursuant to said Lease Contract; and [Narsi]
shall continue to be directly and primarily liable to [Weingarten] for the
performance of all covenants, duties and obligations of [Mamji] under
such Lease Contract, including payment of rental, and such liability
shall remain and continue in full force and effect as to any further
assignment or transfer of the Lease Contract, whether or not [Narsi]
shall have received any notice or consented to such assignment or
transfer, and whether or not [Weingarten] may subordinate any of its
liens and/or security interests, contractual or statutory; provided,
however, that any sum paid by [Mamji] to [Weingarten] shall be credited
on the aforesaid obligation of [Narsi]. [Weingarten] shall not be
obligated to give any notice to [Mamji] which is not presently provided
for as a duty of [Weingarten] under said Lease Contract.

(Emphasis added.)

          The parties disagree with respect to the definition of the term “lease contract.” 
The trial court found the Lease Assignment to be ambiguous and stated that the court
believed that Weingarten intended Narsi to be the guarantor, but it was not sure if the
leases were enough to “get them there.” The trial court also considered the fact that
Weingarten drafted the Lease Assignment. After deliberation, the trial court awarded
Weingarten $347,274.35


 plus attorney’s fees.
Lease Interpretation
          In his first and second issues, Narsi contends that the trial court erred in
granting final judgment in favor of Weingarten because ambiguity exists regarding
whether, under the terms of the Lease Assignment, Narsi’s liability extended beyond
November 30, 2001—the end of the Renewal Agreement. Weingarten asserts that
there is no ambiguity and all parties agreed to the intent of the Lease Assignment. 
The Lease Assignment at issue provides that:
WHEREAS, by Lease Contract (the “Original Lease”) dated
September 8, 1995, WEINGARTEN REALTY INVESTORS, therein
and herein referred to as “Landlord,” leased to AMARALI [sic] M.
NARSI and RAJAB A. RAHIM, therein called “Tenant” and hereinafter
called “Assignor,” a storeroom . . . for a term commencing November
21, 1995, and terminated November 30, 2001, reference being here
made to such Lease Contract for all relevant purposes; and
 
WHEREAS, the Original Lease was amended by a Renewal Letter
Agreement dated September 30, 1998 (said Original Lease, together
with the Renewal Letter Agreement shall hereinafter be referred to as
the “Lease Contract”);


 and

          . . .
 
[Narsi] does hereby sell, assign and transfer unto Assignee [Mamji],
effective April 1, 2001 (hereafter called “Effective Date”), all of
[Narsi’s] leasehold interest under the aforesaid Lease Contract herein
above referred to for the entire remainder of the lease term (such period
being sometimes herein referred to as the “assignment period”).

          Absent ambiguity, we interpret a contract as a matter of law. DeWitt County
Elec. Co-op., Inc. v. Parks, 1 S.W.3d 96, 100 (Tex. 1999). “Whether a contract is
ambiguous is a question of law that must be decided by examining the contract as a
whole in light of the circumstances present when the contract was entered.” 
Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd., 940 S.W.2d 587, 589 (Tex.
1996). “If the written instrument is so worded that it can be given a certain or definite
legal meaning or interpretation, then it is not ambiguous and the court will construe
the contract as a matter of law.” Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983). 
“An ambiguity exists only if the contract language is susceptible to two or more
reasonable interpretations.” Am. Mfrs. Mut. Ins. Co. v. Schaefer, 124 S.W.3d 154,
157 (Tex. 2003). The language in a contract is to be given its plain grammatical
meaning unless doing so would defeat the parties’ intent. DeWitt County Elec. Coop.,
1 S.W.3d at 101. We presume that the parties intended every clause to have an
effect. Heritage Res., Inc. v. NationsBank, 939 S.W.2d 118, 121 (Tex. 1996). 
          In our analysis, we must determine whether the parties have contracted to
extend Narsi’s obligation in the lease contract through the assignment period of the
Lease Assignment. Narsi contends that the “Lease Contract” expired by its terms on
November 30, 2001—at the end of the Renewal Agreement—and that the Lease
Assignment does not keep Narsi liable for any extension of the lease contract. 
Weingarten, on the other hand, contends that Narsi remains liable for the entire
remainder of the assignment period—November 30, 2006.
          If a contract is worded so that a court may properly give it a definite or certain
legal meaning or interpretation, then it is not ambiguous. Friendswood Dev. Co. v.
McDade + Co., 926 S.W.2d 280, 282 (Tex. 1996). A contract is ambiguous only
when there exists a genuine uncertainty as to which of two meanings is proper. 
Columbia Gas, 940 S.W.2d at 589. However, an ambiguity does not arise simply
because the parties advance conflicting interpretations of the contract. Forbau v.
Aetna Life Ins. Co., 876 S.W.2d 132, 134 (Tex. 1994). In order for an ambiguity to
exist, both interpretations must be reasonable. Nat’l Union Fire Ins. Co. v. CBI
Industries, Inc., 907 S.W.2d 517, 520 (Tex. 1995).
          Narsi argues that the Lease Assignment extends the lease to November 30,
2006, but does not extend the “lease contract,” which is a defined term. We disagree. 
The term “lease,” which is used throughout the Lease Assignment, is defined in the
Renewal Agreement as follows:
Reference is made to the captioned Lease Contract dated September 8,
1995, together with all subsequent amendments and extensions thereto,
collectively herein referred to as “Lease,” for a term which commenced
November 21, 1995, and shall terminate November 30, 1998.

Almost three years later, on May 22, 2001, the Lease Assignment references the term
“lease” as follows:
The term of the Lease is hereby extended through November 30, 2006,
unless sooner terminated in accordance with the terms and conditions set
forth in the Lease.

Paragraph 2 of the Lease Assignment also uses the term “lease”:
Commencing December 1, 2001, Tenant shall pay to Landlord, as
Minimum Rent, in accordance with the terms and conditions of Article
IV of the Lease, the following . . . .

Only the Original Lease contains “articles.” Furthermore, paragraph 12 of the Lease
Assignment states “all defined terms used herein shall have the same meaning as
when used in the Lease unless another meaning is clearly indicated.” The term
“lease” in the Lease Assignment refers to the Original Lease and the Renewal
Agreement. Consequently, the phrase “entire remainder of the lease term” in the
Lease Assignment refers to the lease’s extension through November 30, 2006. When
the lease contract phrase is read in the context of the assignment period contained in
the Lease Assignment, its meaning becomes clear—Narsi remains liable through the
Lease Assignment’s extension of the lease contract. 
          We overrule Narsi’s first and second issues.
Mitigation of Damages
          In his third issue, Narsi complains that Weingarten failed to mitigate its
damages. Weingarten asserts it properly mitigated its damages.
          A landlord has a duty to make reasonable efforts to mitigate damages when the
tenant breaches the lease and abandons the property. Tex. Prop. Code Ann.
§ 91.006 (Vernon 2007); Austin Hill Country Realty, Inc. v. Palisades Plaza, Inc.,
948 S.W.2d 293, 299 (Tex. 1997). However, the landlord is not required to fill the
premises with any willing tenant; the replacement tenant must be suitable under the
circumstances. Austin Hill, 948 S.W.2d at 299. The landlord’s failure to use
reasonable efforts to mitigate damages bars the landlord’s recovery against the
breaching tenant only to the extent that damages reasonably could have been avoided. 
Id. The tenant bears the burden to prove that the landlord has mitigated or failed to
mitigate damages and the amount by which the landlord reduced or could have
reduced its damages. Id.
          Pursuant to section 16.02 of the Original Lease, Weingarten does not have the
duty to relet the leased premises, but it does have a duty to “diminish[] by any net
sums thereafter received by Landlord through reletting the Lease Premises during said
period.” According to section 91.006 of the Texas Property Code, a landlord has a
duty to mitigate damages, “a provision of a lease that purports to waive a right or to
exempt a landlord from liability or duty under this section is void.” Tex. Prop. Code
Ann. § 91.006 (Vernon 2007). The Original Lease was signed before section 91.006
of the Texas Property Code was enacted, but the Renewal Agreement was signed
afterwards. Assuming without deciding that section 91.006 applies here, Weingarten
gave Narsi offsets and credits once its new tenant moved in. Mamji tried to bring in
a third party by the name of Fatehali Chatoor to take over the lease. Weingarten did
not have a duty to accept the tenant presented by Mamji. Narsi failed to present
credible evidence to the trial court to demonstrate that Weingarten failed to mitigate
its damages. Because Weingarten did not have a duty to accept the third party tenant
Mamji presented, and because Weingarten gave Narsi offsets and credits once a new
tenant moved in, we hold that Weingarten properly mitigated its damages.
          We overrule Narsi’s third issue.
Attorney’s Fees
          In his fourth issue, Narsi argues that Weingarten is not entitled to recover
attorney’s fees because there was no evidence or expert testimony verifying that the
fees were reasonable and necessary. We use an abuse of discretion standard of
reviewing attorney’s fees awards in non-declaratory judgment actions. See Ridge Oil
Co. v. Guinn Invs. Inc., 148 S.W.3d 143, 163 (Tex. 2004). 
          Weingarten asserts that it is entitled to attorney’s fees because it won its breach
of contract claim against Narsi. See Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8)
(Vernon 1997) (attorney’s fees recoverable for breach of contract claim). When a
prevailing party in a breach of contract suit seeks attorney’s fees, section 38.001
mandates an award of reasonable fees if there is proof that the fees are reasonable. 
See Atlantic Richfield Co. v. Long Trusts, 860 S.W.2d 439, 449 (Tex.
App.—Texarkana 1993, writ denied); Budd v. Gay, 846 S.W.2d 521, 524 (Tex.
App.—Houston [14th Dist.] 1993, no writ). A trial court has the discretion to fix the
amount of attorney’s fees, but it does not have the discretion to completely deny
attorney’s fees if they are proper under section 38.001. See Budd, 846 S.W.2d at 524. 
The party seeking to recover attorney’s fees carries the burden of proof. See Stewart
Title Guaranty Co. v. Sterling, 822 S.W.2d 1, 8, 10 (Tex. 1992).
          Weingarten’s attorney, Richard Howell, testified that he had expended
approximately $13,000 at the rate of $225 per hour. Howell also testified that the
services provided and the hourly rates were reasonable based on the issues involved
in the case. Finally, Howell testified that $2,500 was a reasonable legal fee to charge
if the case was appealed to this court; and $5,000 would be a reasonable fee if a
petition for review is filed with the Texas Supreme Court. Howell’s testimony was
uncontroverted. 
          What amount of attorney’s fees is reasonable is a question of fact. See Int’l
Sec. Life Ins. Co. v. Spray, 468 S.W.2d 347, 349 (Tex. 1971). But where, as here,
trial counsel’s testimony concerning attorney’s fees for the trial of a case is clear,
positive and direct, and uncontroverted, the court takes it as true as a matter of law. 
See Ragsdale v. Progressive Voters League, 801 S.W.2d 880, 882 (Tex. 1990). This
is especially the case where the opposing party had the means and opportunity to
challenge the testimony and failed to do so. See id.; see also Tex. Civ. Prac. & Rem.
Code Ann. § 38.003 (Vernon 1997) (stating rebuttable presumption that usual and
customary attorney’s fees are reasonable). Because Narsi failed to take the available
opportunity to question or controvert Howell’s testimony, we hold that the testimony
established Weingarten’s reasonable and necessary legal fees through trial of the case
as a matter of law.
          We overrule Narsi’s fourth issue.
Conclusion
          We affirm the judgment of the trial court.
 
                                                             George C. Hanks, Jr.
                                                             Justice

Panel consists of Justices Taft, Hanks, and Higley.