Opinion issued April 22, 2010.















 

 

 

 

 

 

In The

Court of
Appeals

For The

First
District of Texas

________________

 

NO. 01-08-00812-CV

________________

 

APACHE
INDUSTRIAL PAINTING, Appellant

 

 v.

 

GULF
COPPER & MANUFACTURING CORPORATION, Appellee

 

 



On
Appeal from the 212th District Court

Galveston
County, Texas

Trial
Court Cause No. 06CV1063A

 

 



MEMORANDUM
OPINION

 

Appellant,
Apache Industrial Painting (“Apache”), brings this appeal to complain of the
trial court’s summary judgment in favor of Gulf Copper & Manufacturing
Corporation (“Gulf”).  Apache complains
that the trial court erred by granting summary judgment in Gulf’s favor because
the Master Services Agreement signed between Apache and Nabors Drilling USA
(“Nabors”) (the “Apache/Nabors MSA”) does not require Apache to indemnify
Gulf.  Instead, Apache contends the MSA
Gulf signed with Nabors (the “Nabors/Gulf MSA”) requires Gulf to indemnify
Apache.  Apache asks that we reverse the
trial court’s rendering summary judgment in favor of Gulf and render judgment
in its favor.   

We reverse the
trial court’s summary judgment in favor of Gulf and render partial judgment in
favor of Apache, holding that neither Apache nor Gulf is entitled to indemnity
from the other.   

BACKGROUND

Apache and Gulf
were both subcontractors performing repairs on a jack-up drilling rig owned by
Nabors Drilling USA while the rig was in Gulf’s shipyard.  This appeal arises out of a personal injury
lawsuit filed by an employee of Apache, Steve Brokmann, against Nabors and
Gulf.  Brokmann’s lawsuit alleged that
both Nabors and Gulf were negligent.  

Nabors and Gulf
filed cross-claims for indemnity against Apache, based on the MSAs Apache and
Gulf signed with Nabors.  In its
cross-claim against Apache, Gulf alleged that the Apache/Nabors MSA requires
that Apache assume the defense and indemnity of Gulf in the Brokmann
lawsuit.  In the alternative, Gulf
alleged that other agreements between Apache and Nabors require Apache to
indemnify Gulf.  Gulf therefore sought a
declaration as to the required indemnity and brought a breach of contract claim
against Apache based upon its failure to indemnify and defend Gulf and its
failure to name Gulf as an additional insured on its insurance policies. 

Apache answered
Gulf’s cross-claim by generally denying the allegations and asserting that the
accident was caused solely by an employee of Gulf.  Apache also argued that the Apache/Nabors MSA
was superseded by other agreements between Apache and Nabors, and that the
indemnity obligations in the Apache/Nabors MSA were not sufficiently
conspicuous.  In addition, Apache counterclaimed
against Gulf, asserting that, if Apache was required to indemnify Nabors, Gulf
was then required to indemnify Apache under the terms of the Gulf/Nabors
MSA.  Apache sought a declaration that it
was not required to indemnify either Nabors or Gulf, or alternatively, that
Gulf was obliged to indemnify Apache for any sums it paid Nabors.  Apache also sought its attorney’s fees.

Nabors and Gulf
filed a motion for summary judgment on their claims against Apache.  The joint motion sought summary judgment on
their claims against Apache for breach of contract based upon Apache’s failure
to provide indemnity and defense for Nabors and Gulf in the underlying personal
injury lawsuit.  Additionally, Nabors and
Gulf alleged that Apache committed a breach of contract by failing to procure
insurance covering the claims at issue and by failing to list Nabors and Gulf
as additional insured on such a policy.  

Apache filed
cross-motions for summary judgment on its contention that it was not required
to indemnify either Gulf or Nabors, and sought summary judgment in its favor on
its indemnity claim against Gulf.  Gulf’s
reply to Apache’s cross-motions for summary judgment asserted that the trial
court should render judgment in Gulf’s favor because Apache was not entitled to
indemnity under the Gulf/Nabors MSA.

The trial court
granted Nabors’ and Gulf’s joint motion for summary judgment against Apache and
denied Apache’s motions for summary judgment against Gulf and Nabors.  The trial court also ordered Apache to pay
the attorney’s fees incurred by Nabors and Gulf in the indemnity lawsuit and
the costs of the settlements they reached in the Brokmann lawsuit.

This appeal
followed.  Apache originally appealed the
summary judgment in favor of Nabors as well as that in favor of Gulf, but it
subsequently settled with Nabors. 
Accordingly, Apache and Nabors sought to dismiss those claims from this
appeal, sever the portion of the appeal against Nabors and remand it to the
trial court for entry of a final judgment in accordance with the
settlement.  That relief was granted on
November 13, 2009.  This opinion is
therefore limited to the resolution of Apache’s remaining issues on appeal as
they relate to the trial court’s summary judgment in favor of Gulf.  

ANALYSIS

On appeal,
Apache complains that the trial court erred by granting summary judgment in
favor of Gulf and by not granting Apache’s motion for summary judgment against
Gulf.  Although Apache raises four
issues, these can be distilled down to two contentions: (1) the court erred by
granting summary judgment on Gulf’s claims against Apache because Gulf  was not entitled to indemnification under the
Apache/Nabors MSA; and (2) the trial court erred by failing to grant summary
judgment in Apache’s favor on Apache’s indemnity claim against Gulf because
Apache is a member of the “Nabors Group” under the Gulf/Nabors MSA and the
accident in question was alleged to have resulted from the negligence of a Gulf
employee.

A.              
Standard of Review

We review the district
court’s summary judgment de novo.  Valence Operating Co. v. Dorsett, 164
S.W.3d 656, 661 (Tex. 2005); Provident
Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex.
2003).  Summary judgment is proper when
there are no disputed issues of material fact and the movant is entitled to
judgment as a matter of law.  Tex. R. 
Civ.  P. 166a(c).  In deciding whether there is a disputed
material fact issue precluding summary judgment, we take as true proof
favorable to the non-movant, and we indulge every reasonable inference and
resolve any doubt in favor of the non-movant. 
Randall’s Food Mkts., Inc. v.
Johnson, 891 S.W.2d 640, 644 (Tex. 1995). 
Where, as here, the parties file cross-motions for summary judgment on
overlapping issues, and the trial court grants one motion and denies the other,
we should review the summary-judgment evidence supporting both motions and
“render the judgment that the trial court should have rendered.”  FM
Props. Operating Co. v. City of Austin, 22 S.W.3d 868, 872 (Tex. 2000); see Tex. Mun. Power Agency v. Pub. Util.
Comm’n of Tex., 253 S.W.3d 184, 192, 199 (Tex. 2007) (citing rule for
review of grant of summary judgment and reviewing denied cross-motion for
summary judgment under same standard).

B.              
The Indemnity Agreements

The Apache/Nabors MSA and the Gulf/Nabors MSA
are substantially similar documents, relating to the work each performed on the
jack-up rig and differing only in the names of the contractors and the dates
signed.[1]  They state, in relevant part:

This MASTER
SERVICE AGREEMENT (“Agreement”) is made and entered . . . by and between NABORS
CORPORATE SERVICES, INC., a corporation organized and existing under the laws
of the state of Delaware, as agent for Nabors Industries, Inc. and its
subsidiaries (collectively, “Nabors”), and [Apache Industrial Painting or Gulf
Copper & Manufacturing Corp.] (“Contractor”) . . .

 

     . . . .

 

4.     INDEPENDENT
CONTRACTOR RELATIONSHIP

 

a.     Contractor is and shall be at all times an
independent contractor.  Contractor shall
have the right to control the manner in which the Work is performed.

 

b.     Neither Contractor nor anyone employed by
Contractor shall be deemed for any purpose to be an employee, agent, servant or
representative of Nabors . . . 

 

c.     
Nabors shall have no
power or authority to direct, supervise or control Contractor with respect to
the means, manner, or method of performance of the Work or services performed
or rendered hereunder and Contractor, in the exercise of his independent
employment and as an independent contractor, shall select the means, manner and
method of performance thereof . . . 

 

     . . . .

 

9.     INSURANCE

 

     . . . .

 

a.      The Nabors Group shall be named
as additional insureds in each of Contractor’s policies, except Worker’s
Compensation.

 

     . . . .

 

10.                       
  RISK
ALLOCATION AND INDEMNITY

 

a.      For purposes of this Agreement,
the “Nabors Group” shall be comprised of the directors, officers, employees,
servants, agents, representatives and invitees of Nabors and its parent,
subsidiary and affiliate companies and the directors, officers, employees,
servants, agents, representatives and invitees of contractors (other than
Contractor) hired by Nabors and of the operator and its joint owners for whom
Nabors is working.

 

b.     For purposes of this Article, the “Contractor Group” shall be comprised
of the directors, officers, employees, servants, agents, representatives and
invitees of the Contractor and its affiliate companies and the directors,
officers, employees, servants, agents, representatives and invitees of other
contractors hired by Contractor.

 

c.     
Contractor shall be liable
for, and hereby releases, all claims against Nabors Group with respect to all
losses, costs, damages, expenses and legal fees which Contractor may suffer,
sustain, pay or incur directly or indirectly arising from or on account of bodily
injury to or death of any persons in the Contractor Group arising out of or
relating to the Agreement or any Contract. 
In addition, Contractor shall defend and indemnify Nabors Group against
all actions, proceedings, claims, demands, losses, costs, damages, expenses and
legal fees whatsoever which may be brought against Nabors Group or which Nabors
Group may sustain, pay, or incur, directly or indirectly on account of (1)
bodily injury to or death of any person in the Contractor Group, or loss of or damage
to any property owned by a member of the Contractor Group or (2) bodily injury
or death of any person or loss of or damage to any property resulting from any
negligent act or willful misconduct of any person within the Contractor Group.

 

d.     Except as otherwise specified herein, the liability, release and
indemnity provisions contained in this Agreement shall apply notwithstanding
any breach or alleged breach of this Agreement or any Contract and shall be
without regard to cause or causes, including, without limitation pre-existing
defects in equipment or materials, the negligence, whether sole, concurrent,
active, passive, primary or secondary of either party or any other person
including without limitation the party or person being released or indemnified,
or otherwise, strict liability or the unseaworthiness of any vessel ingress and
egress, loading and unloading. 

 

. . . .

 

h. The indemnity obligations contained in this
Agreement or any Contract with respect to the injury to or death of any person
in the Contractor Group or damage to or loss of property of any member of the
Contractor Group shall be supported by liability insurance coverage in the
amounts set forth in Article 9 above. 

 

 

C.  
Is Gulf a member of the “Nabors Group” under
the Apache/Nabors MSA, entitling it to indemnity from Apache and to be named as
an additional insured on Apache’s insurance policies?

 

Apache first contends that
the court erred by granting summary judgment on Gulf’s breach of contract
claims against Apache because Gulf was not a member of the “Nabors Group” under
the Apache/Nabors MSA.   

Under the terms of the
Apache/Nabors MSA, if Gulf is not a member of “Nabors Group,” then Apache does
not owe it an indemnity obligation, nor was it required to name Gulf as an
additional insured on its insurance policies. 
Alternatively, Apache argues that Gulf’s motion for summary judgment on
its breach of contract claim for failure to name Gulf as an additional insured
must fail because there is no evidence in the record that Apache did, in fact,
fail to so name it.

 “Nabors Group” is defined in the Apache/Nabors
MSA as the
“the directors, officers, employees, servants, agents, representatives and
invitees of Nabors and its parent, subsidiary and affiliate companies” and “the
directors, officers, employees, servants, agents, representatives and invitees
of contractors (other than [Apache]) hired by Nabors . . . .”  Apache/Nabors MSA Paragraph 10a.  By its plain language, the
“Nabors Group” specifically includes the employees of Nabors’ contractors, but
it does not include the contractors themselves. 
Gulf seeks to avoid this limitation by
claiming it is an “invitee” of Nabors.  Apache counters that Gulf
cannot, as a matter of law, be an “invitee” aboard a vessel[2]
undergoing repairs inside its own shipyard. 


In construing a written
contract, the primary concern of the court is to ascertain the true intentions
of the parties as expressed in the instrument. 
Coker v. Coker, 650 S.W.2d
391, 393 (Tex. 1983); Nat’l Union Fire
Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc., 907 S.W.2d 517, 520 (Tex.
1995).  To achieve this objective, courts
should examine and consider the entire writing in an effort to harmonize and
give effect to all the provisions of the contract so that none will be rendered
meaningless.  Id.  No single provision
taken alone will be given controlling effect; rather, all the provisions must
be considered with reference to the whole instrument.  Id.;
Myers v. Gulf Coast Minerals Mgmt. Corp.,
361 S.W.2d 193, 196 (Tex. 1962).  “We
construe contracts ‘from a utilitarian standpoint bearing in mind the
particular business activity sought to be served’ and ‘will avoid when possible
and proper a construction which is unreasonable, inequitable, and
oppressive.’”  Frost Nat’l Bank v. L & F Distribs., Ltd., 165 S.W.3d 310, 312
(Tex. 2005) (quoting Reilly v. Rangers
Mgmt., Inc., 727 S.W.2d 527, 530 (Tex. 1987)).  Further, “all writings that pertain to the
same transaction will be considered together, even if they were executed at
different times and do not expressly refer to one another.”  DeWitt
County Elec. Coop., Inc. v. Parks, 1 S.W.3d 96, 102 (Tex. 1999).  

If a written instrument can
be given a certain or definite legal meaning or interpretation, then it is not
ambiguous, and the court will construe the contract as a matter of law.  Coker,
650 S.W.2d at 393.  The interpretation of
an unambiguous contract is a question of law, which we review de novo.  See MCI
Telecomms. Corp. v. Tex. Utils. Elec. Co., 995 S.W.2d 647, 650 (Tex. 1999).  Ambiguity does not arise simply because the
parties advance conflicting interpretations of the contract; rather, for an
ambiguity to exist, both interpretations must be reasonable.  Lopez
v. Munoz, Hockema & Reed, L.L.P., 22 S.W.3d 857, 861 (Tex. 2000).

In interpreting a contract,
we must presume that the parties thereto intended every clause to have some
effect; therefore, we consider each part of the document with every other part
of the document so that the effect and meaning of one part on any other part
may be determined.  See Birnbaum v. Swepi LP, 48 S.W.3d 254, 257 (Tex. App.—San Antonio
2001, pet. denied).  Moreover, we give
terms their plain, ordinary, and generally accepted meaning unless the
instrument shows that the parties used such terms in a technical or different
sense.  Id.  Finally, we enforce an
unambiguous agreement as written.  Id. 
We are not permitted to rewrite an agreement to mean something it did
not.  Id.  We cannot change the contract simply because
we or one of the parties comes to dislike its provisions or thinks that
something else is needed in it.  Id. 
Parties to a contract are masters of their own choices and are entitled
to select what terms and provisions to include in or omit from a contract.  Id.  

Gulf argues that it is an
“invitee” under the Apache/Nabors MSA, and thus part of the “Nabors Group” in
the Apache/Nabors MSA and therefore entitled to indemnity from Apache.  The MSA that Apache signed with Nabors for
work performed on Nabors’ jack-up rig clearly defined Apache’s relationship to
Nabors as a “Contractor,” and created clear vertical indemnity obligations
flowing between Apache and Nabors. 
Similarly, the MSA that Gulf signed with Nabors regarding Gulf’s work on
Nabors’ rig also defined Gulf as a “Contractor” and created a vertical
indemnity obligation between Gulf and Nabors. 
Gulf now seeks to ignore its own contractual and indemnity relationship
with Nabors, to gain the benefits of Nabors’ contractual and indemnity relationship
with Apache.  To allow this result would
essentially require us to ignore the fact of Gulf’s clear MSA with Nabors and
the structure of its indemnity relationship with Nabors.  In light of the requirements that we are to
read separate contracts governing the same “transaction” together, and that we
are to construe contracts “‘from a utilitarian standpoint bearing in mind the
particular business activity sought to be served’ and ‘avoid when possible and
proper a construction which is unreasonable, inequitable, and oppressive,’” we
decline to reach the result urged by Gulf. 
DeWitt County Elec. Coop., 1
S.W.3d at 102; Frost Nat’l Bank, 165
S.W.3d at 312.    

Accordingly, we hold that
the trial court erred in granting summary judgment on Gulf’s behalf.  We sustain Apache’s first issue and reverse
the trial court’s grant of summary judgment in Gulf’s favor on Gulf’s breach of
contract claims against Apache. 

D.  
Is Apache entitled to indemnity from Gulf?

 

Like Gulf, Apache attempts
to bring itself within the narrow definition of “Nabors Group” in the
Gulf/Nabors MSA by arguing that it was an “invitee” of Nabors at the time of
Brokmann’s injury and that it is therefore part of the “Nabors Group” and
entitled to indemnity from Gulf.  Based
on this argument, Apache contends that the trial court erred by denying its
motion for summary judgment for indemnity from Gulf for its losses arising from
the Brokmann lawsuit.  

As we noted above, however,
the MSA that Apache signed with Nabors defined Apache’s role as a “Contractor”
and created an indemnity relationship with Nabors.  Accordingly, we decline to allow Apache to
define itself as an “invitee” of Nabors under the Gulf/Nabors MSA and insert
itself into the Gulf/Nabors indemnification arrangement.  We overrule Apache’s second issue and hold
that the trial court did not err by denying Apache’s motion for summary
judgment on the grounds that it was entitled to indemnity from Gulf. 

CONCLUSION

Based upon the contracts and
the record before us, neither Apache nor Gulf is entitled to contractual
indemnity from the other.  We sustain
Apache’s first issue in part, reversing the trial court’s granting summary judgment
in favor of Gulf and rendering judgment in favor of Apache on the Gulf’s breach
of contract claims against it.  We
overrule Apache’s second issue and affirm the trial court’s denial of Apache’s
motion for summary judgment against Gulf. 


                                      

 

 

George C. Hanks, Jr.

                                                Justice

 

Panel consists of Justices
Jennings, Hanks, and Bland.

 

 











[1]           The Apache/Nabors
MSA is dated October 13, 2004.  After
executing the MSA with Apache, Nabors also issued a Purchase Order to Apache
for painting services covering the period in which Brokmann was injured.  The Purchase Order contained its own terms
and conditions.  Apache originally
contended that its indemnification obligation in the Apache/Nabors MSA had been
superseded by the Purchase Order.  In its
motion for summary judgment and response to Apache’s motion, Gulf contended
that the Purchase Order does not modify the Apache/Nabors MSA.  On appeal, Apache apparently agrees.  Our analysis therefore focuses upon the
language of the MSAs Apache and Gulf signed with Nabors.  

 





[2]           Jack-up rigs are “vessels” within the
meaning of admiralty law.  Jones v. Francis Drilling Fluids, Ltd.,
613 F. Supp. 2d 858, 863 n.2 (S.D. Tex. 2009) (citing Demette v. Falcon Drilling Co., 280 F.3d 492, 498 n.18 (5th Cir.
2002)).