# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-22-00459-CV

---

**Austin JSB, Ltd., Appellant**

**v.**

**Otwell Realty, Ltd., Appellee**

---

### FROM THE 353RD DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-20-002756, THE HONORABLE JESSICA MANGRUM, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

In this dispute over the permissible uses of an easement, Austin JSB, Ltd. appeals from the trial court's final judgment following a bench trial. For the following reasons, we affirm in part and reverse and remand in part.

## BACKGROUND

Otwell Realty, Ltd. owns property on the shoreline and under the water of Lake Travis and Mossy Hollow Cove (the Otwell Property). Austin JSB owns hilltop property that is adjacent to the Otwell Property and that abuts Lake Travis. When Austin JSB acquired its property in 2017, it also acquired an easement (the Easement) to use portions of the Otwell Property. The geographic relationship of Austin JSB's property and the area of the Otwell Property covered by the Easement is best understood by referring to an aerial photograph that was admitted as part of an exhibit at trial:



Austin JSB's property is the area within the red lines, and the area within the green lines shows the area of the Easement. [1]

The Easement provides in relevant part:

Under this easement Grantees may use this real property for picnicking, fishing, bathing, boating and other similar activities in common with such uses by [Grantor], [his] heirs and assigns. This non-exclusive easement permits Grantees to install and maintain floating boat docks, water pumps, and other facilities for their private use within the area herein described, so long as such installations do not unreasonably interfere with access to and along the waterline by Grantor, his heirs, and assigns, and other persons holding similar easements. Neither Grantor nor Grantees shall construct any permanent facilities on the easement except Grantees may construct floating boat docks, water pumps and similar facilities and Grantor may install hike and bike trails and anchors for boat docks. . . . Grantor reserves the right to use the property covered by this easement for

---

[1] "Lake Travis is a flood control lake with widely varying surface levels. The shoreline of Lake Travis moves as the surface level of the lake changes." *Sierra Assoc. Grp., Inc. v. Hardeman*, No. 03-08-00324-CV, 2009 Tex. App. LEXIS 1181, at *2–3 (Tex. App.—Austin Feb. 20, 2009, no pet.) (mem. op.).

purposes that do not unreasonably interfere with the easement granted herein, including but not limited to allowing floating boat docks to float over the easement, provided they are not connected to the shore of the easement and do not significantly interfere with the passage of boats. Grantees agree to abide by the rules and regulations of all applicable regulatory agencies when utilizing the easement granted hereby. Grantees hereby covenant to keep the easement clean and free of litter generated by Grantees and their guests.

Austin JSB plans to develop its property as a gated multifamily residential community with access to Lake Travis. In 2019, Austin JSB installed a 1,500 square-foot floating dock (the Dock) within the area covered by the Easement. The Dock is physically anchored to the Otwell Property with four cables and anchors—two are attached to the dry shore and two are attached to the lakebed beneath the water. Austin JSB also installed an electric "2,000 pound capacity trolley and carriage system with a 2,000 pound traction drive chassis, double cable drive sheaves, and 300 linear feet of 6" Ibeam galvanized adjustable tract system, with steel support legs and bracings" (the Tram) that provides access from Austin JSB's property across the Otwell Property to the Dock.[2] The terrain is steep and rocky from the hilltop to the shoreline where the Dock is located. The location of the Dock and Tram on the Otwell Property is best understood by referring to a photograph that was admitted in evidence at trial:

---

[2] According to testimony at trial, the Tram was designed to carry four people along with "floaties and picnic baskets, et cetera."



After James Otwell, who owns Otwell Realty, became aware of the Tram and Dock, he contacted the Lower Colorado River Authority (LCRA), and in November 2019, LCRA posted a notice of violation for "construction of a marina facility on Lake Travis without a permit." According to LCRA, under a Highland Lakes Marina Ordinance, Austin JSB should have obtained a permit before beginning construction of the Dock.[3] After receiving the notice,

---

[3] In letters to Austin JSB, which were admitted as an exhibit at trial, the representative from LCRA states that the ordinance provides that generally a person must obtain a permit from LCRA before constructing a "Marina Facility on any of the Highland Lakes" and defines a "Marina Facility" to include a "Community Marina" and a "Community Marina" as "[a] marina used in lieu of multiple Residential Docks."

Austin JSB applied to obtain a permit from LCRA, but LCRA placed the application on hold pending resolution of the parties' dispute.

In March 2020, Austin JSB signed a development and annexation agreement concerning its property with the City of Lago Vista. The City approved Austin JSB's "Concept Plan" for the development, which included "no more than 70 residential units, consisting of a mixture of two-family residential units, condominium residential units, and apartment hotel units, with amenity areas, parks, and open areas." In the agreement, an "apartment hotel" was defined "as a living unit for transient guests of the Project which are available for rent as an amenity within the Project, and in the event the apartment hotel units are not in use for the benefit of a resident, shall be available for rent to the public."

In May 2020, Otwell Realty sued Austin JSB seeking declaratory relief that the Easement does not allow the Tram or "any other permanent improvements" on the Otwell Property, damages based on breach of contract, and attorney's fees.[4] Austin JSB filed an answer, counterclaims, and special exceptions to Otwell Realty's petition. In its special exceptions, Austin JSB contended that Otwell Realty's claims could only be brought as a trespass-to-try-title action. *See* Tex. Prop. Code § 22.001(a) (stating that trespass-to-try-title action "is the method of determining title to lands, tenements, or other real property"). Following a hearing, the trial court overruled Austin JSB's special exceptions.

The parties then filed motions for summary judgment. Otwell Realty's motion for partial summary judgment asked the trial court to construe the plain language of the Easement

---

[4] Before filing suit, Otwell Realty through counsel sent a demand letter to Austin JSB to remove its anchors, cables, and the Tram from the Otwell Property within 15 days and notified it that the failure to do so would result in the filing of a lawsuit. Austin JSB responded through counsel that it had the right to construct and maintain the Dock at its present location based on the Easement.

and determine that the Tram is a "permanent facility" that is not allowed under the terms of the Easement. Austin JSB's motion asked the trial court to determine that an earlier easement authorized the Dock and Tram. Following a hearing, the trial court denied Austin JSB's motion and granted Otwell Realty's motion in part, concluding that the Tram was a "permanent facility" as that term is used in the Easement but that there was a fact issue whether the Tram "falls within the exception set forth in the Easement that 'Grantees may construct floating boat docks, water pumps and similar facilities.'"[5]

The case proceeded to a bench trial. Otwell Realty's live pleadings at the time of trial asserted claims for declaratory relief, anticipatory and actual breach of the Easement, and, pleading in the alternative, trespass. If the trial court determined that "some or all" of Austin JSB's improvements on the Otwell Property violated the Easement, Otwell Realty requested that the trial court order Austin JSB to remove them and pay Otwell Realty damages. The witnesses at trial were the real-estate broker who was involved in Austin JSB's purchase of its property; Sinclair Black, who had an ownership interest in Austin JSB; and James Otwell. The parties joined issue with whether the Tram and the cables and anchors attached to the Dock were permitted uses under the terms of the Easement. The exhibits at trial included photographs of the Tram and Dock as installed on the Otwell Property, LCRA's notice of violation and communications with Austin JSB about the violation, the development and annexation agreement between Austin JSB and the City of Lago Vista, marketing materials for Austin JSB's proposed development, and a copy of the Easement.

---

[5] Austin JSB is not challenging the trial court's summary judgment ruling that the Easement governs here.

In its final judgment, the trial court incorporated its prior summary-judgment ruling and awarded declaratory relief and attorney's fees to Otwell Property. The court found that:

(1)     By Order of October 29, 2020, the Court determined that the [T]ram is a permanent facility.

(2)     The Tram is not a boat dock, water pump or similar facility. As such, the [T]ram is in violation of the Easement.

(3)     The Easement prevents public use. To the extent that a hotel or VRBO-type operation at the proposed development by [Austin JSB] would constitute a public accommodation, allowing rentals to the public—that is prohibited by the Easement.

(4)     [Austin JSB] has failed to comply with the Easement which requires it to abide by the rules and regulations of all applicable regulatory agencies when utilizing the Easement.

Based on these findings, the trial court declared that Austin JSB "has no right under the Easement or otherwise to install or maintain a tram or any other permanent facility on the Otwell Property" or "to install or maintain its current dock anchors and cables on the Otwell Property." The trial court ordered Austin JSB to remove "its tram and all dock anchors and cables from the Otwell Property" and that should Austin JSB fail to do so within thirty days, Otwell Realty "may do so" at Austin JSB's "sole cost and expense." The trial court also signed findings of fact and conclusions of law. This appeal followed.

**ANALYSIS**

In three issues, Austin JSB contends that: (1) Otwell Realty was required to employ the exclusive remedy of a trespass-to-try-title action to assert its claims; (2) certain

7

provisions of the trial court's final judgment are erroneous and should be struck; and (3) the trial court erred in declaring that the Tram and Dock violated the terms of the Easement.

**Standard of Review**

In an appeal from a bench trial, we subject the trial court's findings of fact to the same standards of review applied to jury verdicts. *See Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996); *see also Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991) (explaining that trial court's findings of fact have "same force and dignity as a jury's verdict upon questions"); *Trinity Drywall Sys., LLC v. TOKA Gen. Contractors, Ltd.*, 416 S.W.3d 201, 206–07 (Tex. App.—El Paso 2013, pet. denied) ("Declaratory judgments are reviewed under the same standards as other judgments." (citing Tex. Civ. Prac. & Rem. Code § 37.010)). We "defer to the trial court's findings of fact—so long as they are supported by the record—and review conclusions of law de novo." *Southwestern Elec. Power Co. v. Lynch*, 595 S.W.3d 678, 683 (Tex. 2020); *see Reliance Nat'l Indem. Co. v. Advance'd Temps., Inc.*, 227 S.W.3d 46, 50 (Tex. 2007) ("Appellate courts review legal determinations de novo, whereas factual determinations receive more deferential review based on the sufficiency of the evidence."). We will uphold the trial court's conclusions if the judgment can be sustained on any legal theory supported by the evidence. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).

Austin JSB's issues also require interpretation of the Easement's terms. "We apply basic principles of contract construction and interpretation when considering an express easement's terms." *Marcus Cable Assocs., L.P. v. Krohn*, 90 S.W.3d 697, 700 (Tex. 2002) (citing *DeWitt Cnty. Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 100 (Tex. 1999)); *see Davis v. Johnston*, No. 03-10-00712-CV, 2012 Tex. App. LEXIS 5249, at *43–49 (Tex. App.—Austin

8

June 28, 2012, no pet.) (mem. op.) (applying basic principles of contract construction and interpretation to determine express easement's meaning and scope). The "starting point" is "the easement's plain language." *Lynch*, 595 S.W.3d at 689 (citing *Krohn*, 90 S.W.3d at 700). "The contracting parties' intentions, as expressed in the grant, determine the scope of the conveyed interest." *Krohn*, 90 S.W.3d at 700–01 (citing *DeWitt Cnty. Elec. Coop.*, 1 S.W.3d at 103). "When the grant's terms are not specifically defined, they should be given their plain, ordinary, and generally accepted meaning." *Id.* at 701 (citing *DeWitt Cnty. Elec. Coop.*, 1 S.W.3d at 101). "Nothing passes by implication 'except what is reasonably necessary' to fairly enjoy the rights expressly granted." *Id.* at 701 (quoting *Coleman v. Forister*, 514 S.W.2d 899, 903 (Tex. 1974)).

Guided by these standards, we turn to Austin JSB's issues.

**Trespass to Try Title**

In its first issue, Austin JSB argues that the judgment must be reversed and rendered in its favor because Otwell Realty was required to seek the exclusive remedy of a trespass-to-try-title action and that it failed to satisfy the statutory requirements to recover for that type of action. Austin JSB argues that "the essence of [Otwell Realty's] claim was that it was the title owner of the easement property and, therefore, could enforce its possessory property rights and demand the removal of [Austin JSB's] facilities therefrom."

"A trespass to try title action is the method of determining title to lands, tenements, or other real property." Tex. Prop. Code § 22.001(a). "Actions under this statute 'involve detailed pleading and proof requirements.'" *See Lance v. Robinson*, 543 S.W.3d 723, 735 (Tex. 2018) (citing *Martin v. Amerman*, 133 S.W.3d 262, 265 (Tex. 2004) (citing Tex. R. Civ. P. 783–809)). "The trespass-to-try-title statute, however, only applies when the claimant is

9

seeking to establish or obtain *the claimant's* ownership or possessory right in the land at issue." *Id.* at 736. For that reason, "the trespass-to-try-title statute does not apply to a claimant who seeks to establish an easement, because such a claimant does not have such a possessory right." *Id.* "An easement 'is a nonpossessory interest that authorizes its holder to use the property for only particular purposes.'" *Id.* (quoting *Krohn*, 90 S.W.3d at 700).

In contrast to a trespass-to-try-title action, the Uniform Declaratory Judgments Act (UDJA) provides that a "person interested under a deed . . . or other writings constituting a contract or whose rights, status, or other legal relations are affected by a . . . contract . . . may have determined any question of construction or validity arising under the instrument . . . and obtain a declaration of rights, status, or other legal relations thereunder." Tex. Civ. Prac. & Rem. Code § 37.004(a); *see Lance*, 543 S.W.3d at 735–37 (comparing claims that may be brought under UDJA with those that must comply with trespass-to-try-title statute and observing that UDJA "provides an efficient vehicle for parties to seek a declaration of rights under certain instruments" (quoting *Martin*, 133 S.W.3d at 265)).

Austin JSB relies on the trial court's declaration in the final judgment that Otwell Realty was the owner of the Otwell Property and the court's order requiring Austin JSB to remove the Tram, anchors, and cables to argue that the "essence" of Otwell Realty's "lawsuit was to assert superior title and possessory rights in itself"—that "Otwell Realty (unlike Austin JSB) was seeking to enforce its alleged ownership of title" to the Otwell Property and "its associated *possessory property interests* against [Austin] JSB." But as the trial court found, the parties' dispute was not about Otwell Realty's ownership or possessory rights to the Otwell

10

Property but the permissible uses of the Otwell Property under the terms of the Easement.[6] *See Davis*, 2012 Tex. App. LEXIS 5249, at \*47–49 (reviewing trial court's declarations as to scope of express easement); *cf. Lance*, 543 S.W.3d at 737 (concluding party was required to bring trespass-to-title-action where party sought declaration that it was owner of disputed area).

The trial court's conclusions of law included:

> Under Chapter 37 of the Civil Practice and Remedies Code, [Otwell Realty] is entitled to a Judgment declaring the scope and extent of [Austin JSB's] limited rights to use the Otwell Property under the Easement.

And Otwell Realty's trespass claim sought an order from the trial court requiring Austin JSB to remove improvements only if the trial court concluded that the improvements were not allowed under the terms of the Easement. *See Barnes v. Mathis*, 353 S.W.3d 760, 764 (Tex. 2011) (defining trespass to real property as "unauthorized entry upon the land of another" including "when one enters—or causes something to enter—another's property"); *see also MQ Prosper N., LLC v. Coulter*, No. 05-20-00800-CV, 2022 Tex. App. LEXIS 9027, at \*1–2 (Tex. App.—Dallas Dec. 12, 2022, pet. denied) (mem. op.) (considering and resolving claims for breach of easement, trespass, and declaratory judgment).

Based on our review of the record, we conclude that Otwell Realty was not required to bring its claims against Austin JSB as a trespass-to-try-title action. *See, e.g.*, *Lynch*, 595 S.W.3d at 686–87, 691 (rendering judgment as to easement's scope in context of UDJA claim); *Lance*, 543 S.W.3d at 737 (holding that claimant was not required to file

---

[6] In their opening statements, the parties confirmed that the only issue before the trial court was the scope of the Easement. Otwell Realty's counsel represented to the trial court, "The sole issue before this Court is going to be the construction of an easement deed." Similarly, Austin JSB's counsel represented to the trial court, "As far as what's going to be at issue in this trial, it's all about do we get to not only have a dock but also anchors and tram."

trespass-to-try-title action to assert alleged easement rights over disputed property area and that claimant properly pursued relief under UDJA); *Harbor Ventures, Inc. v. Dalton*, No. 03-10-00690-CV, 2012 Tex. App. LEXIS 4009, at *28–36, *46–48 (Tex. App.—Austin May 18, 2012, pet. denied) (mem. op.) (construing scope of easements and modifying trial court's declarations based on construction). We overrule Austin JSB's first issue.

**Challenged Provisions of the Trial Court's Judgment**

In its second issue, Austin JSB argues that two provisions in the final judgment were erroneous and must be corrected.

*Declaration as to "Any Other Permanent Facility"*

First, Austin JSB challenges the trial court's declaration in the final judgment that Austin JSB "has no right under the Easement or otherwise to install or maintain a tram, or any other permanent facility on the Otwell Property." Austin JSB argues that this declaration is overbroad and contrary to the Easement's plain language and the ripeness doctrine. The ripeness doctrine "emphasizes the need for a concrete injury for a justiciable claim to be presented"; it "focuses on whether the case involves 'uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all,'" and "serves to avoid premature adjudication." *See Patterson v. Planned Parenthood of Hous. & Se. Tex., Inc.*, 971 S.W.2d 439, 442 (Tex. 1998) (citations omitted); *see also Robinson v. Parker*, 353 S.W.3d 753, 755 (Tex. 2011) (discussing ripeness doctrine). Otwell Realty responds that the trial court's "ruling largely tracks the language of the Easement"; it "merely reiterates that the Tram is a 'permanent facility' and so specifically prohibited by the Easement, and further that (as stated in the Easement) no

12

'permanent facility' is allowed on the Easement area"; and it does not give "an advisory opinion as to any future uses of the Easement."

Applying basic principles concerning contract construction and interpretation, we are mindful that "[c]ourts may not rewrite the parties' contract, nor should courts add to its language," and courts "must enforce the contract as written." *In re Davenport*, 522 S.W.3d 452, 457 (Tex. 2017) (orig. proceeding); *see Krohn*, 90 S.W.3d at 700 (stating that courts apply basic principles of contract construction and interpretation when considering express easement's terms). Here, the plain language of the Easement expressly allows grantees to construct certain types of permanent facilities on the area covered by the Easement. It provides: "Neither Grantor nor Grantees shall construct any permanent facilities on the easement except Grantees may construct floating boat docks, water pumps and similar facilities." Thus, based on the plain language of the Easement, we conclude that the trial court's declaration is erroneous to the extent it prohibits "any other permanent facility on the Otwell Property." *See In re Davenport*, 522 S.W.3d at 457.

*Right to Remove the Improvements at Austin JSB's "sole cost and expense"*

Second, Austin JSB challenges the trial court's order that if Austin JSB fails to complete the removal of the Tram, the anchors, and the cables from the Otwell Property within thirty days, Otwell Realty "may do so at [Austin JSB's] sole cost and expense." Austin JSB challenges this provision on the grounds that Otwell Realty's pleadings did not request this relief, it was not raised at trial, and it is contrary to the rule that monetary awards be stated with definiteness. *See* Tex. R. Civ. P. 67 (addressing issues tried by consent), 301 (requiring judgment to conform to pleadings at trial).

13

A trial court's judgment must conform to the pleadings on file at the time judgment is rendered. *Wagner v. Texas Dep't of Savs. & Mortg. Lending*, No. 03-21-00389-CV, 2023 Tex. App. LEXIS 489, *5–6 (Tex. App.—Austin Jan. 26, 2023, no pet.) (mem. op.) (citing Tex. R. Civ. P. 301). "However, a party may not raise a variance between the pleadings and the judgment for the first time on appeal." *Id.* (citing *Dodd v. Savino*, 426 S.W.3d 275, 290–91 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *Solomon v. Steitler*, 312 S.W.3d 46, 61 (Tex. App.—Texarkana 2010, no pet.)). Further, parties generally must raise complaints with the trial court to preserve appellate review. *See* Tex. R. App. P. 33.1(a). We have not found, and Austin JSB has not cited, any place in the record where Austin JSB raised its complaints with the trial court about this part of the relief awarded in the judgment. Accordingly, we conclude that Austin JSB failed to preserve these complaints for our review.

For these reasons, we sustain Austin JSB's second issue as to the challenged declaration but overrule it as to the challenged relief.

**Challenges to the Trial Court's Declarations**

In its third issue with three subparts, Austin JSB argues that the trial court erred in declaring that Austin JSB's Tram and Dock violate the Easement.

*Permissible Uses Under the Terms of the Easement*

In its first subpart to this issue, Austin JSB argues that the Easement expressly allowed the Dock and that the Dock encompasses its cables, anchors, and the Tram, which were reasonably necessary to use and enjoy the Dock, and that the evidence was legally and factually insufficient to support any finding to the contrary.

14

We begin by observing that the relief granted in the final judgment was not directed to the Dock itself but to the anchors and cables attached to the Dock and the Tram. In the final judgment, the trial court declared that Austin JSB "has no right under the Easement or otherwise" "to install or maintain" a tram or "its current Dock anchors and cables on the Otwell Property" and ordered Austin JSB to remove the Tram and the anchors and cables. The Easement expressly allows the construction and installation of floating docks, the evidence established that the Dock was a floating dock, and the trial court did not find or conclude otherwise. Thus, we limit our discussion to the anchors, cables, and the Tram.

Beginning with the anchors and cables, Austin JSB argues that they are a "component" of the Dock and "reasonably necessary" for the use and enjoyment of its rights under the Easement because without them, the Dock would float away. *See Krohn*, 90 S.W.3d at 701 (stating that "[n]othing passes by implication 'except what is reasonably necessary' to fairly enjoy the rights expressly granted"). The Easement expressly grants the right to install, construct, and maintain floating docks. To "install" is "to set up for use or service," *Webster's Third New Int'l Dictionary* 1171 (2002); to "construct" is "to form, make, or create by combining parts or elements: build, fabricate," *id.* at 489; and to "maintain" is to "keep in a state of repair, efficiency, or validity: preserve from failure or decline," *id.* at 1362.

Applying the plain meaning of the words in the Easement's grant of the right "to install and maintain floating docks" and to "construct floating boat docks," the evidence supports that the anchors and cables were part of the Dock's construction, installation, and maintenance. The exhibits included the installation contract for the Dock with the anchors and cables listed as components of the Dock. Black also testified that without the anchors and cables, the Dock

15

would float away and that he was not aware of the Dock ever floating outside the area covered by the Easement because "[i]t's anchored."

Otwell Realty argues that the right to install a dock with anchors on the Otwell Property "is expressly reserved for Otwell [Realty] (although nothing prohibits Austin JSB from installing anchors and cables on its own property or other properties in the area)" and that a "floating dock cannot 'significantly interfere with the passage of boats.'" The Easement provides that the grantor may install "anchors for boat docks" without addressing whether grantee may install anchors, but it is the grantor—not the grantee—that may allow "floating boat docks to float over the easement, provided they are not connected to the shore of the easement and do not significantly interfere with the passage of boats." Although the Easement does not expressly address the grantee's right to install anchors or connect a floating dock to the shore, there are no similar restrictions on a grantee that its floating dock may not be connected to the shore or interfere with the passage of boats, and James Otwell admitted that a floating dock had to be anchored "unless you want it to float away."

As to the chosen location of the Dock, James Otwell testified that a prior grantee of the Easement had a floating boat dock that "they didn't have to anchor into the riverbed" and that the Dock could be anchored to Austin JSB's land instead of the Otwell Property. But the Easement does not contain language limiting the location for a grantee's placement of a floating dock within the area covered by the Easement or the means for installing, constructing, or maintaining a dock except that "such installations [should] not unreasonably interfere with access to and along the waterline by Grantor, his heirs, and assigns, and other persons holding

16

similar easements."  Here, there was no evidence that the anchors and cables themselves had unreasonably interfered with others' access.[7]

On this record and based on the plain language of the Easement, we conclude that the anchors and cables were part of the Dock's construction, installation, and maintenance; that the evidence conclusively established that they were "reasonably necessary" to fairly enjoy the right to use and enjoy the Dock; and, thus, that they were implicitly authorized under the terms of the Easement.  *See Krohn*, 90 S.W.3d at 701; *see also Davis*, 2012 Tex. App. LEXIS 5249, at *79 (observing that Lake Travis boat dock "floats on the water near shore, but it must be physically attached or anchored to the dry land to keep it from drifting").  Thus, we conclude that the trial court erred when it declared that Austin JSB "has no right under the Easement or otherwise to install or maintain its current dock anchors and cables on the Otwell Property" and when it concluded that Austin JSB breached the Easement by installing the anchors and cables on the Otwell Property.

We do not reach the same conclusion as to the Tram.  Austin JSB argues that the Dock encompasses the Tram because the Dock is not accessible from Austin JSB's property without it "given the undisputed slope and terrain" to the shoreline.  Black testified that the Tram was "an integral part of the floating boat dock, which is allowed" and that in the Dock's current location, "[w]ithout the tram, you can't access the dock; and without the dock, you can't access

---

[7] There was evidence that if the LCRA granted Austin JSB a permit for a "community marina," owners of the remaining usable shoreline in the area could be restricted from installing additional boat docks, but the trial court did not declare that the Dock was not allowed under the terms of the Easement.  In this context, evidence of this possible consequence of the Dock's location within the area of the Easement is not evidence that the anchors and cables themselves were unreasonably interfering with others' access to or along the shoreline.

the lake." James Otwell also agreed that where the Dock was currently located, Austin JSB needed a permanent structure to access the Dock.

The trial court determined that the Tram was in violation of the Easement because it was "a permanent facility" and not a "boat dock, water pump, or similar facility." Applying the plain meanings of "floating dock" and "tram," we agree with the trial court that a floating dock does not encompass a tram. *See Webster's* at 872 (defining "floating dock" as "a dock that floats on the water"), 2425 (defining "tram" as "any of various vehicles as a: boxlike wagon often of steel running on a tramway or railway"). And the plain meaning of "similar" does not support that a tram is a "similar" facility to a boat dock or a water pump.[8] *See id.* at 2120 (defining "similar" as "having characteristics in common: very much alike: comparable"), 2584 (defining "water pump" as "a pump for raising or circulating water"); *cf. West Beach Marina, Ltd. v. Erdeljac*, 94 S.W.3d 248, 262, 270 (Tex. App.—Austin 2002, no pet.) (interpreting scope of easement that provided "right and privilege to install water lines, boat docks, etc. of the type customarily used with lake property in the area" and affirming trial court's determination that residential boat docks were allowed but not right to linger on dry portion of area of easement).

Thus, the issue becomes whether the Tram was "reasonably necessary" to the fair enjoyment of Austin JSB's rights expressly granted under the Easement. *See Krohn*, 90 S.W.3d at 701 ("Nothing passes by implication 'except what is reasonably necessary' to fairly enjoy the rights expressly granted."). The express purpose of the Easement is "for picnicking, fishing,

---

[8] In his testimony, Black agreed that the Tram was not a "similar facility" to a water pump. A "facility" is "something (as a hospital, machinery, plumbing) that is built, constructed, installed, or established to perform some particular function or to serve or facilitate some particular end." *Webster's Third New Int'l Dictionary* 812–13 (2002). Even if the Tram is a facility as that word is used in the Easement, we conclude that it is not "similar" to a floating dock or water pump.

18

bathing, boating and other similar activities in common with such uses by [grantor], [his] heirs, and assigns." Although the evidence established that the current location of the Dock required a permanent structure for access, there was testimony that other locations in the area covered by the Easement would not require a tram, that floating docks do not necessarily require trams, and that the Tram interfered with others' access to and along the waterline.

James Otwell testified that a prior owner of Austin JSB's property had placed a dock on the other side of Austin JSB's property in the Mossy Hollow Cove that was "easy to walk down to," that no tram would be needed in that location, and that "very few" docks "out there" need trams. He also testified that if Austin JSB placed its dock in that location, they would "[e]asily" be able to go in and out of the cove with boats, canoes, kayaks, and sailboats and that a tram is not required to have a floating boat dock. He further testified about how the Tram in its current location restricts his and others' use of the Otwell Property:

> There's a few—physically, the prior owner that owned all that land out there, which I own much of it now, wanted to be able to put in trails along the waterfront so that people could walk through it or you could put observation decks as you saw in one of the other pictures. With the tram there, you can't cross it. So physically, it's—it limits you to where you can go on my property. The pictures that they had of two men standing underneath it, well, that's—that's on a high lake elevation; that would be underwater, and it's what they're saying they can't get down to already.
>
> So where you can walk on the flat part of it, it would block you physically from doing that.

And the real-estate broker agreed that there were flatter locations within the area covered by the Easement that could be used to access the lake without a permanent access installation.[9]

It was within the trial court's province as the factfinder to determine the credibility of the witnesses and the weight to be given to their testimony. *See Golden Eagle Archery, Inc. v. Jackson,* 116 S.W.3d 757, 761 (Tex. 2003) (observing "familiar principle that [factfinder] is the sole judge of the credibility of witnesses and the weight to be given to their testimony"); *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986) (explaining that factfinder can choose to believe one witness over other witnesses or resolve inconsistencies in testimony when presented with conflicting evidence). Deferring to the trial court's role as the factfinder, we conclude that the evidence was sufficient to support the trial court's finding that the Tram was in violation of the Easement and its presumed finding that the Tram was not reasonably necessary for Austin JSB's fair enjoyment of its rights under the Easement. *See Capitol Rod & Gun Club v. Lower Colo. River Auth.*, 622 S.W.2d 887, 893 (Tex. App.—Austin 1981, writ ref'd n.r.e.) (concluding that it was not "reasonably necessary to the fair enjoyment of the express easement" to use land "for the purpose of placing and maintaining thereon boathouses, pier and docks" for grantee to have right "to any type of structures it wished anywhere below the 715—foot contour line"). Thus, we conclude that the trial court did not err by declaring that Austin JSB has no right under the Easement or otherwise to install or maintain

---

[9] Although he raised concerns that the water was "very shallow for maybe almost half of that easement," the real-estate broker testified:

Q. But the point is there's flatter areas that allow walking access for you to be able to put a dock on other places along the shoreline; correct?

A. Yes, correct. There are other places we could have put a dock.

20

the Tram and by concluding that Austin JSB breached the terms of the Easement by installing the

Tram on the Otwell Property.

*Public Use*

In its second subpart to its third issue, Austin JSB argues that the trial court erred

by basing its judgment on the provision in the Easement that limits using floating boat docks for

Austin JSB's "private use":

> This non-exclusive easement permits Grantees to install and maintain floating boat docks, water pumps, and other facilities for their private use within the area herein described.

In the final judgment the trial court found that:

> The Easement prevents public use. To the extent that a hotel or VRBO-type operation at the proposed development by [Austin JSB] would constitute a public accommodation, allowing rentals to the public—that is prohibited by the Easement.

The trial court's findings of fact included that Austin JSB's "designs for the project included at

least 3 hotel suites for use as short-term rentals on the property,"[10] and its conclusions of law

---

[10] Black testified that Austin JSB's proposed development was to be a gated community that limited its access to property owners and their guests. Referring to the development and annexation agreement between Austin JSB and the City of Lago Vista that was admitted as an exhibit at trial, the trial court's findings of fact included:

> [Austin JSB] has sought zoning and/or platting approval of a development on the entirety of its property that would make the Tram and Dock available to large numbers of condo owners, visitors, hotel guests, and other members of the public. Specifically, [Austin JSB] represented to the City of Lago Vista that it intended to use its property to construct "more than 70 residential units, consisting of a mixture of two-family residential units, condominium residential units, and

included that "inclusion of a hotel or VRBO-type operation at [Austin JSB's] proposed development would constitute a public accommodation, allowing rentals to the public, which is prohibited under the Easement's terms limiting the scope of the Easement to private use."

Beginning with the plain language of the Easement, it expressly limits use of the area covered by the Easement to "private use," but it also references "guests" of the grantees. Consistent with the Easement's plain language, Black testified that use of the Dock was intended for the property owners in the proposed development and their guests. And as to the proposed "apartment hotel" in the development, the real-estate broker answered, "Yes," when asked, "So the owner is picking who the guest is that's paying rent for the hotel room; right?"

Although in a different context, the Texas Supreme Court has concluded that short-term residential leasing qualifies as the "private use" of property in the same manner as long-term residential leasing does. *See JBrice Holdings, LLC v. Wilcrest Walk Townhomes Ass'n*, 644 S.W.3d 179, 185–86 & n.27 (Tex. 2022) (defining "private" in context of case, which involved restrictive covenants and restrictions by homeowners' association on short-term leases, to mean "for the use of one particular person or group of people only," distinguishing between meaning of "private use" and "'noncommercial' use," and holding that short-term rentals in context of case qualified as "private use"); *see, e.g., City of Austin v. Whittington*, 384 S.W.3d 766, 779 (Tex. 2012) (defining "public use" for condemnation purposes). Informed by the Texas

---

apartment hotel units, with amenity areas, parks and open areas." [Austin JSB] further sought zoning as a Commercial Resorts District.

The trial court also found that Austin JSB had applied for a permit for a "community marina." According to the LCRA's letter to Austin JSB, a "community marina" is defined under the Highland Lakes Marina Ordinances as a marina to be used "in lieu of multiple Residential Docks."

Supreme Court, we conclude that the trial court erred to the extent that it found that the Easement prohibits a hotel or VRBO-type operation at the proposed development or to the extent that its judgment was based on this finding.[11]

*LCRA's Rules and Regulations*

In its third subpart to this issue, Austin JSB argues that the trial court erred by basing its judgment on the provision in the Easement that Austin JSB agrees "to abide by the rules and regulations of all applicable regulatory agencies when utilizing the easement granted hereby." In the final judgment, the trial court found that Austin JSB had "failed to comply with the Easement which requires it to abide by the rules and regulations of all applicable regulatory agencies when utilizing the Easement."

Austin JSB concedes that it "initially failed to obtain an LCRA permit for its Dock," and the exhibits include the LCRA's notice of violation, but Austin JSB relies on the evidence showing that it had taken steps to cure the violation by filing an application with the LCRA and that LCRA had not required it to remove the Dock during the period that Austin JSB's permit remains pending.[12] The trial court also did not order the removal of the Dock itself, and Otwell Realty did not contend that the anchors and cables themselves require a permit

---

[11] Even if we were to conclude that the Easement would not allow a guest at the apartment hotel to use the Easement area because that would be a "public use" of the Easement, this conclusion would not support the trial court's order to remove the anchors and cables. The remedy for unauthorized use of the Easement by the public might support injunctive relief or a trespass claim, but it would not support removing the Dock. At the time of trial, no "guest" of the proposed apartment hotel had used the area of the Easement because the development project was on hold.

[12] Consistent with the trial court's final judgment, this opinion does not address the impact of the LCRA's potential denial of Austin JSB's pending permit application. *See Robinson v. Parker*, 353 S.W.3d 753, 755 (Tex. 2011) (discussing ripeness doctrine); *Patterson v. Planned Parenthood of Hous. & Se. Tex., Inc.*, 971 S.W.2d 439, 442 (Tex. 1998) (same).

23

or otherwise violate the LCRA's rules or regulations. In this context and given our conclusions above about the cables and anchors, we conclude that the trial court erred to the extent that it ordered the removal of the anchors and cables based on Austin JSB's failure to comply with the LCRA's rules.[13]

For these reasons, we sustain Austin JSB's third issue in part and overrule it in part.

*Attorney's Fees*

Austin JSB requests that if this Court sustains its third issue and reverses the trial court's judgment, this Court should remand the case to the trial court for reconsideration of its claim for attorney's fees.

In light of our disposition on appeal, particularly as to Austin JSB's third issue, we reverse and remand the attorney's fee award for reconsideration. *See Barshop v. Medina Cnty. Underground Water Conservation Dist.*, 925 S.W.2d 618, 637 (Tex. 1996) (reversing judgment and remanding case to trial court for it to consider and exercise discretion under UDJA as to award of attorney's fees); *Harbor Ventures*, 2012 Tex. App. LEXIS 4009, at *45–46 (reversing award of attorney's fees in light of disposition on appeal and explaining that substantial modification to judgment may affect whether attorney's fees are equitable and just and that trial court may want to exercise discretion differently in light of disposition); *Countrywide Home Loans, Inc. v. Howard*, 240 S.W.3d 1, 7 (Tex. App.—Austin 2007, pet. denied) (reversing trial court's ruling regarding attorney's fees and remanding for further

---

[13] The evidence showed that Austin JSB has agreed to a restrictive covenant on its property declaring that Austin JSB "covenants and agrees to operate its existing boat dock in accordance with the Rules and Regulations of the Lower Colorado River Authority Highland Lakes Marina Ordinance."

consideration, explaining that in light of court's disposition reversing summary judgment, trial court "may wish to reconsider its award of attorney's fees"); *see also* Tex. R. App. P. 44.1(b).

## CONCLUSION

For these reasons, we reverse the trial court's judgment to the extent: (i) it ordered Austin JSB to remove the anchors and cables attached to the Dock; (ii) it declared that Austin JSB has no right under the Easement to install or maintain "any other permanent facility"; and (iii) it declared that the Easement prohibits a hotel or VRBO-type operation at the proposed development. In light of our disposition, we also reverse the award of attorney's fees and remand the issue of attorney's fees to the trial court for reconsideration. We affirm the judgment in all other respects.

_____

Rosa Lopez Theofanis, Justice

Before Chief Justice Byrne, Justices Triana and Theofanis

Affirmed in Part; Reversed and Remanded in Part

Filed: August 18, 2023